No. 2--07--0728          Filed:  8-15-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MILLINEUM MAINTENANCE MANAGEMENT, INC., and CAPITAL DEVELOPMENT GROUP, LLC, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 06--MR--752 |
| THE COUNTY OF LAKE, LAKE COUNTY BOARD, LAKE COUNTY CHAIRMAN SUZI SCHMIDT, THE VILLAGE OF METTAWA, DEERPATH FARM, LLC, GORDON WHITE, JOHN CAHILL, JOHN FRANKS, LIZ OSTMAN, RURIKO PARSONS, DOT FOX, BEVERLY BLOSSOM, CAROL GLEDHILL, HUGO STEINITZ, MICHAEL FLAWS, EQUESTRIAN CONNECTION, and CHET STROYNY, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) ) | Honorable Mary S. Schostok, |
| (Fred Baird, Defendant-Appellant). | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant Fred Baird filed this interlocutory appeal in connection with a suit by plaintiffs Millineum Maintenance Management, Inc., and Capital Development Group, LLC, which sought among other things administrative review of the Lake County Board's (Board) denial of their conditional-use permit application. The trial court granted plaintiffs' motion for a <u>de novo</u> hearing

to review the Board's decision to deny them a conditional-use permit, but the court certified two questions of law pursuant to Supreme Court Rule 308, which allows this court in its discretion to allow an interlocutory appeal where "the trial court *** finds that the [order to be appealed] involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the *** litigation." 155 Ill. 2d R. 308(a). On July 6, 2007, the trial court certified the following questions:

"1. Whether a special use that is not adopted by a county board, but rather is denied by a county board, is subject to de novo judicial review as a legislative decision under 55 ILCS 5/5--12012.1, which states that 'Any special use ... <u>adopted by</u> the county board of any county ... shall be subject to de novo judicial review as a legislative decision[.]'

2. If 55 ILCS 5/5--12012.1 does apply to a denial of a special use permit, does it supersede the Second District's holding in [<u>Gallik v. County of Lake</u>, 335 Ill. App. 3d 325 (2002),] and preclude the court from reviewing the decision under the Administrative Review Law?" (Emphasis in original.)

We granted Baird's petition for leave to appeal.

In a recent case, <u>Ashley Libertyville, LLC v. Village of Libertyville</u>, 378 Ill. App. 3d 661 (2008), we were presented with the same certified questions as are presented here, but we did not reach those questions on their merits. Instead, we determined that, regardless of the answers to the certified questions, the grant or denial of the special-use permit at issue there was a legislative act not subject to administrative review, because the Village of Libertyville's municipal ordinance required that any special-use permit be granted " 'by ordinance duly adopted.' " (Emphasis omitted.) <u>Libertyville</u>, 378 Ill. App. 3d at 665, quoting Libertyville Zoning Code §16--9.2 (eff. February 28,

1995). The relevant ordinance here does not compel the same conclusion. See Unified Development Ordinance of Lake County §§3.6.6(B)(3) (eff. April 11, 2000) ("the County Board shall review the application and act to approve, approve with conditions or deny the application based on [a specific set of criteria]"). Thus, we must address the questions certified in this case.

Since we have the written argument of only one side of this appeal, we must apply the principles set forth by our supreme court in First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128 (1976). Prior to the supreme court's decision in Talandis, Illinois reviewing courts had adopted various practices to dispose of appeals in cases in which appellees did not file briefs. "In some cases the courts *** considered the merits of the appeal, while in others the courts *** reversed pro forma." Talandis, 63 Ill. 2d at 131. After reviewing the approaches adopted in other jurisdictions, the supreme court laid out the following rule:

"We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. In other cases if the appellant's brief demonstrates prima facie reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed." Talandis, 63 Ill. 2d at 133.

Talandis supplies three points of guidance in a typical case. First, since Talandis did away with the practice of pro forma reversal, a reviewing court should not rule in the appellant's favor as a matter of course due to the appellee's failure to file a brief. Second, if the appellant's brief

establishes a prima facie case, we may decide the case in the appellant's favor. Third, if the record is simple and the claims of error are susceptible to easy decision without the aid of an appellee's brief, or if justice so requires, we may reach the merits.

Talandis does not apply directly here, however, because we are considering not a typical appeal, but rather a discretionary interlocutory appeal limited to two certified questions. Since there is no particular order being appealed and we are presented only with two questions of law, the first Talandis option, outright reversal, is not an option in any event. Applying the second Talandis option, ruling in the appellant's favor if the appellant presents a prima facie case on appeal, would put us in the awkward position of making determinations of law that may or may not be accurate (as opposed to the normal Talandis situation in which we can order a particular case-specific outcome without expressing any opinion on the legal merits of the case). Thus, we decline that option as well. Instead, we pursue the third option and consider this appeal on its merits.

Because we are presented solely with questions of law, our review is de novo. Townsend v. Sears, Roebuck & Co., 227 Ill. 2d 147, 153 (2007).

Before addressing the certified questions directly, we provide some background on the legal principles at play. "[T]here is 'a recognized distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other.' " American Federation of State, County & Municipal Employees v. Department of Central Management Services, 288 Ill. App. 3d 701, 711 (1997) (AFSCME), quoting United States v. Florida East Coast Ry. Co., 410 U.S. 224, 245, 35 L. Ed. 2d 223, 239, 93 S. Ct. 810, 821 (1973). Administrative decisions, also called quasi-judicial decisions, "concern agency decisions that affect a small number of persons on

individual grounds based on a particular set of disputed facts that were adjudicated." AFSCME, 288 Ill. App. 3d at 711; see People ex rel. Klaeren v. Lisle, 202 Ill. 2d 164, 183 (2002) (equating administrative and quasi-judicial acts); City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc., 196 Ill. 2d 1, 15 (2001), quoting O. Browder, R. Cunningham, G. Nelson, W. Stoebuck & D. Whitman, Note on "Special Exceptions," "Special Uses," or "Conditional Uses," in Basic Property Law 1184, 1186 (5th ed. 1989) (equating administrative and quasi-judicial decisions). "On the other hand, quasi-legislative actions involve general facts affecting everyone." AFSCME, 288 Ill. App. 3d at 711.

"When a legislative body acts administratively in ruling on a permit application, its decision is subject to general principles of administrative review." Living Word Outreach, 196 Ill. 2d at 13. These "principles of administrative review" include the procedures set out in the Administrative Review Law (735 ILCS 5/3--101 et seq. (West 2006)). See 55 ILCS 5/5--12012 (West 2006) (decisions of county board of appeals reviewable under the Administrative Review Law); see also 55 ILCS 5/1--6007 (West 2006) (decisions of county board reviewable under the Administrative Review Law). Under the Administrative Review Law, a trial court's review "shall extend to all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3--110 (West 2006). However, "[n]o new or additional evidence *** shall be heard by the court." 735 ILCS 5/3--110 (West 2006). The trial court is thus limited to the record developed at the administrative level and may not "hear additional evidence *** or conduct a hearing de novo." Acevedo v. Department of Employment Security, 324 Ill. App. 3d 768, 773 (2001). A trial court may reverse the administrative decision only where: (1) it determines that the agency's findings of fact were against the manifest weight of the evidence (City of Belvidere v. Illinois State Labor Relations

Board, 181 Ill. 2d 191, 204 (1998)); (2) it determines, based on de novo review, that the agency made a mistake of law (Belvidere, 181 Ill. 2d at 205); or (3) it determines that the agency's application of the facts to the law the agency is charged with administering was clearly erroneous (Belvidere, 181 Ill. 2d at 205). See also AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 392-96 (2001).

Conversely, "[w]hen a legislative body acts in a legislative capacity in ruling on a permit application, its decision is not subject to principles of administrative review." Living Word Outreach, 196 Ill. 2d at 14.[1] Thus, "[t]he Administrative Review Law does not apply to the legislative acts of legislative bodies." Hawthorne v. Village of Olympia Fields, 204 Ill. 2d 243, 253 (2003). "Instead, the legislative body's decision is reviewed for arbitrariness as a matter of substantive due process under the six-part test set forth in La Salle National Bank v. County of Cook, 12 Ill. 2d 40 (1957)." Living Word Outreach, 196 Ill. 2d at 14. When legislation does not affect a fundamental constitutional right, the test for determining whether it complies with substantive due process requirements is the rational basis test, which asks "whether the legislation represents a rational means to accomplish a proper purpose." Messenger v. Edgar, 157 Ill. 2d 162, 176 (1993).[2]

---

[1]We observe here that the idea that a decision on a single permit may be considered "legislative" does not comport with the definition of "legislative" laid out above. To the extent Living Word Outreach misused the term, the supreme court rectified the situation with its later decision in People ex rel. Klaeren v. Lisle, 202 Ill. 2d 164 (2002), which we discuss below.

[2]Legislation that involves a suspect classification will receive a higher level of scrutiny than that supplied by rational basis review, but the scrutiny will come under the rubric of equal protection rather than substantive due process. See J. Nowak & R. Rotunda, Constitutional Law §11.4, at 415

The La Salle factors referenced in Living Word Outreach were devised as a means of applying the rational basis test to as-applied constitutional challenges to zoning decisions. See Napleton v. Village of Hinsdale, 374 Ill. App. 3d 1098, 1109 (2007) ("the utilization of the La Salle factors in an as-applied challenge prevents the irrational, unreasonable, and arbitrary application of a zoning ordinance to a particular property--the flip side of the rational basis test"). (We note tangentially that the distinction between as-applied substantive due process challenges, which examine how legislation affects a particular plaintiff, and facial substantive due process challenges, which examine how the legislation affects all people in any context, is somewhat analogous to the distinction between administrative and legislative decisions--an analogy that likely allowed the courts to use as-applied challenges to review essentially administrative acts.) In considering such a substantive due process challenge, the trial court is not limited to evidence adduced before the body that created the legislative enactment.

Because different forms of judicial review govern administrative and legislative decisions (Gallik v. County of Lake, 335 Ill. App. 3d 325, 327 (2002)) and because different constitutional protections inure to each type of decision, the question of whether a particular zoning decision should be considered administrative or legislative has been contested in several cases. In Klaeren, our supreme court addressed what had become a split of Illinois authority on the issue of whether to classify special-use-permit hearings as legislative or administrative matters for purposes of

_____

(6th ed. 2000) ("If the Court views the law as one that regulates and restricts the ability of every person to exercise [a] fundamental right, it will decide the case on the basis of the due process clause. If the Court determines that the law only restricts the ability of one classification of persons to exercise the fundamental right, the Court will decide the case with equal protection analysis").

determining whether the resulting decisions were subject to administrative review, and it held "that municipal bodies act in administrative or quasi-judicial capacities when those bodies conduct zoning hearings concerning a special use petition." Klaeren, 202 Ill. 2d at 183. The supreme court explained its decision as follows:

"The reasons for classifying zoning hearings that deal with special use applications as administrative or quasi-judicial are manifest. In these hearings, the property rights of the interested parties are at issue. The municipal body acts in a fact-finding capacity to decide disputed adjudicative facts based upon evidence adduced at the hearing and ultimately determines the relative rights of the interested parties." Klaeren, 202 Ill. 2d at 183.

The court went on to hold that, since the decision at issue was administrative and not legislative, some requirements of procedural due process adhered. Klaeren, 202 Ill. 2d at 184-87.

In Gallik, 335 Ill. App. 3d 325, we extended the rule from Klaeren to hold that a county (as opposed to municipal) decision on a conditional-use permit was also an administrative decision subject to administrative review. Gallik, 335 Ill. App. 3d at 329.

After the decisions in Klaeren and Gallik, the legislature enacted Public Act 94--1027 (Pub. Act 94--1027, eff. July 14, 2006), which added current section 5--12012.1 to the Counties Code (Code) (55 ILCS 5/5--12012.1 (West 2006)). That section now provides as follows:

"Actions subject to de novo review; due process.

(a) Any special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the county board of any county, home rule or non-home rule, shall be subject to de novo judicial review as a legislative decision, regardless of whether the process of its adoption is considered administrative for other purposes. Any action seeking the judicial

review of such a decision shall be commenced not later than 90 days after the date of the decision.

(b) The principles of substantive and procedural due process apply at all stages of the decision-making and review of all zoning decisions." 55 ILCS 5/5--12012.1 (West 2006).

With that background, we consider the questions certified for our review. As noted, the first certified question asks whether, under section 5--12012.1 of the Code (55 ILCS 5/5--12012.1 (West 2006)), a county board's denial of a special-use permit is subject to de novo judicial review as a legislative decision rather than review under the Administrative Review Law (735 ILCS 5/3--101 et seq. (West 2006)) as an administrative or quasi-judicial determination. This question presents us with an issue of statutory interpretation. The most fundamental rule of statutory interpretation is that a court must give effect to the intent of the legislature. King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 26 (2005). The best indicator of legislative intent is the language used in the statute itself, and, where possible, that language must be given its plain and ordinary meaning. King, 215 Ill. 2d at 26. A court may not " 'supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law' " if doing so would depart from the plain language of the statute. King, 215 Ill. 2d at 26, quoting In re Marriage of Beyer, 324 Ill. App. 3d 305, 309-10 (2001). If the language of the statute is clear, a court must follow it without resorting to other aids of construction. King, 215 Ill. 2d at 26.

As relevant here, section 5--12012.1 of the Code provides that "[a]ny special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the county board *** shall be subject to de novo judicial review as a legislative decision, regardless of whether the process of its

adoption is considered administrative for other purposes."  55 ILCS 5/5--12012.1(a) (West 2006).

Though we can glean two reasonable interpretations from the above passage, neither interpretation

allows the statute to apply in this case.  First, one could construe the language, "adopted by the

county board," to state a qualification on the applicability of the section, so that the section would

apply only where a board adopts a special use, variance, rezoning, or other amendment to a zoning

ordinance.  Under this interpretation, the section would not apply where a board denies a conditional

use, as is the case here.  Second, one could interpret the legislature's use of the word "other" in its

list of pertinent county board actions--"special use, variance, rezoning, or other amendment to a

zoning ordinance"--as indication that the section refers to the first three actions only when they are

accomplished by an amendment to a zoning ordinance.  Indeed, as noted above, this distinction was

the basis for our decision in Libertyville, where we held that a denial of a special-use permit was

necessarily legislative because the relevant municipal code required that any special-use permit be

allowed by enactment of an ordinance.  Libertyville, 378 Ill. App. 3d 661.  Under this interpretation,

just as with the first interpretation, the section would not apply here.  Thus, although the section may

be ambiguous in some respects, it plainly applies only to the adoption of a special use.

In reaching a different interpretation, the trial court employed the familiar maxim that we

must presume that the legislature did not intend to create absurd, inconvenient, or unjust results

when it enacted the statute in question.  In re Madison H., 215 Ill. 2d 364, 372 (2005).  The trial

court concluded that reading section 5--12012.1 to apply only where a board adopts special-use

permits, and not when it denies them, "creates separate methods of review for special use permits

that are adopted and denied," and it is "extremely unlikely that the legislature intended such a result."

However, to the extent absurdity could sway us from the interpretation we reach above, we do not

see it as a factor in this case, because we do not adopt the trial court's position that the creation of separate methods of review is absurd. The legislature could have quite soundly concluded that the adoption of a special-use permit or other zoning change should receive a different level of judicial review from a denial because they lead to different practical results: an adoption, unlike a denial, upsets the status quo for both the interested property owner and the surrounding community.

That said, we note tangentially that the legislative history behind section 5--12012.1 supplies support for the trial court's position. Though the legislative history is muddled in some ways, it is rather clear on the question of whether this section was meant to apply to all county decisions on special-use permits or only county approvals of special-use permits. In the Senate, Senator Garrett, apparently reading from written notes, added the following explanation to the record:

"The corporate authorities of municipalities and counties are primarily--lawmaking bodies that operate through the political process. Their legislative decisions have traditionally been subject to de novo judicial review. While accepting the Supreme Court's analysis regarding the character of the special use permit process, the General Assembly notes that quasi-judicial proceedings are to be reviewed on the record, which in turn requires such proceedings to be conducted in the manner of a mini-trial. Given their essential legislative character, the corporate authorities of municipalities and counties are not well suited to--conduct mini-trials. In order to promote the efficient and effective governance of municipalities and counties, the General Assembly hereby adopts Senate Bill 94. Senate Bill 94 is not intended to question the essential conclusions in Klaeren regarding the legal character of special use permit decisions or due process, but it provides that any special use decision made by a municipality or--county shall be treated as legislative decisions subject

-11-

to de novo judicial review. To provide uniformity in the statutes, Senate Bill 94 also provides that any variance, rezoning, or other amendment to a zoning ordinance shall be treated as legislative decisions subject to de novo judicial review. In conclusion,--Section (b) of Senate Bill 94 is inserted merely to reflect the existing due process protections that have been--an integral part of the zoning process for the past forty years. While it confirms that public bodies are to conduct their proceedings in a fundamentally fair manner consistent with principles of due process, it is not intended to require public hearing at every stage of the zoning process." 94th Ill. Gen. Assem., Senate Proceedings, May 3, 2006, at 22-23 (statements of Sen. Garrett).

In the House, Representative Mathias, apparently relying on a set of written notes very similar to those used in the Senate, entered the following explanation into the record:

"For legislative intent, let me read this into the record. 'Special use permits are a distinct type of local zoning relief that apply to uses affecting the public interest and imposing impacts on neighboring properties. Special use permits can ordinarily be granted only by ordinances adopted by the elected representatives of a municipality or county (the " 'corporate authorities' "). The corporate authorities of municipalities and counties are primarily lawmaking bodies that operate through the political process. Their legislative decisions have traditionally been subject to de novo judicial review. In the case of People ex rel. Klaeren v. Village of Lisle, the Illinois Supreme Court underscored the importance of ensuring that local zoning processes for special use permits comport with principles of due process and fundamental fairness. The Supreme Court also noted that the ad hoc nature of special use permit determinations give them a quasi-judicial character. While accepting the Supreme

Court's analysis regarding the character of the special use permit process, the General Assembly notes that quasi-judicial proceedings are to be reviewed on the record, which in turn requires such proceedings to be conducted in the manner of a " 'mini-trial.' " Given their essentially legislative character, the corporate authorities of municipalities and counties are not well suited to conduct " 'mini-trials.' " In order to promote the efficient and effective governance of municipalities and counties, the General Assembly hereby adopts Senate Bill 94. Senate Bill 94 is not intended to question the essential conclusions in Klaeren regarding the legal character of special use permit decisions or due process, but it provides that any special use decision made by a municipality or county shall be treated as legislative decisions subject to de novo judicial review. To provide uniformity in the statutes, Senate Bill 94 also provides that any variance, rezoning, or other Amendment to a zoning ordinance shall be treated as legislative decisions subject to de novo judicial review. *** Nothing in Senate Bill 94 is intended to excuse municipalities and counties from conducting their proceedings in a fundamentally fair manner consisten[t] with principles of due process.' " 94th Ill. Gen. Assem., House Proceedings, April 25, 2006, at 6-8 (statements of Rep. Mathias).

This legislative history very clearly demonstrates that the legislature's intent in creating section 5--12012.1 was to nullify the effect of <u>Klaeren</u> with respect to all county or municipal decisions on the types of zoning matters listed in the statute, so that all of those matters would receive judicial review as indicated in the statute instead of as indicated in <u>Klaeren</u>.[3]

---

[3]We note that the legislature is currently considering a proposed amendment to section 12012.1, which amendment would alter the language we now discuss. See 95th Ill. Gen. Assem., Senate Sess. 2014, ____ (March 13, 2008). As that proposal is not yet enacted, we express no

However, though the legislative history supports the trial court's decision, we reiterate that the plain language of the statute leads us to the opposite conclusion, namely, that section 5--12012.1 applies only when a board adopts a special use, and not when it denies one. A court may resort to extrinsic aids, such as legislative history, to determine legislative intent only if the plain language of the statute is ambiguous. Land v. Board of Education of the City of Chicago, 202 Ill. 2d 414, 426 (2002). Since the relevant language of section 5--12012.1 is not ambiguous, we may not consider the legislative history that supports the trial court's conclusion.

Based on the statute's plain language, we conclude that section 5--12012.1 was intended to reach not all county and municipal decisions on relevant zoning matters, but rather only county and municipal decisions to grant the listed zoning actions. Thus we conclude that the statute does not apply to the denial of plaintiffs' application for a conditional-use permit in this case.

Baird also argues that section 5--12012.1 would violate the separation of powers clause of the Illinois Constitution if it were read to require that county special-use-permit decisions be reviewed as legislative, rather than administrative, decisions, because the legislature cannot exercise such control over judicial decision making. Since it is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done (McKenzie v. Johnson, 98 Ill. 2d 87, 103 (1983)), Baird urges that we must adopt some alternative interpretation of the statute to avoid the constitutional infirmity. However, we reject this argument because we disagree with defendant's interpretation of the effect of the statute.

Baird's constitutional argument focuses not on the language we interpret above, but instead on the language that immediately follows it: "[certain zoning decisions] shall be subject to de novo

---

opinion on its effect.

judicial review as a legislative decision, regardless of whether the process of its adoption is considered administrative for other purposes." 55 ILCS 5/5--12012.1(a) (West 2006). Accordingly, in order to address Baird's argument, we must interpret this portion of the statute as well.

Again, we begin our review with the relevant statutory language. Baird takes the language "de novo judicial review as a legislative decision" to evince a statutory requirement that the zoning decisions at issue be considered legislative on judicial review, regardless of their true character, and he thus argues that the statute unconstitutionally usurps the authority of the judiciary. Baird's point is well taken, but, as noted above, where there is some reasonable construction that avoids a constitutional infirmity, a court must adopt that construction. We therefore must view the statutory language through the lens of the relevant constitutional principles.

The separation of powers provision of the Illinois Constitution provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, §1. It is the role of the judiciary to interpret the law and the constitution. People v. Gersch, 135 Ill. 2d 384, 388-89 (1990); see also Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60, 73 (1803) (under the United States Constitution, "[i]t is emphatically the province and duty of the judicial department to say what the law is"). The Illinois Constitution also provides that "Circuit Courts shall have original jurisdiction of all justiciable matters" but "shall have such power to review administrative decisions as provided by law." Ill. Const. 1970, art. VI, §9. Thus, "[w]ith the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 334 (2002). "The General Assembly *** has no power to enact legislation that

would contravene article VI," and, accordingly, except in the area of administrative review, the legislature cannot control the courts' power to adjudicate justiciable matters. Belleville Toyota, 199 Ill. 2d at 334-35. The legislature has nearly unfettered authority, however, to allow or disallow judicial review of administrative acts (see People ex rel. Devine v. Murphy, 181 Ill. 2d 522, 529 (1998) (constitution gives legislature the power to control judicial power to review administrative action)), and it has done so by making the Administrative Review Law applicable to a wide range of administrative decisions. As explained below, the legislature's exercise of this authority does not implicate separation of powers principles unless it grants the courts either too much or too little power.

A statute will be unconstitutional for conferring the judiciary too much power where it "gives the judiciary the responsibility to 'independently and originally' perform a 'nonjudicial' function" properly belonging to another branch of government, such as when a statute allows a court to step entirely into the role of an administrative agency and thus supplant executive judgment. Devine, 181 Ill. 2d at 532, quoting Fields Jeep-Eagle, Inc. v. Chrysler Corp., 163 Ill. 2d 462, 472 (1994).

On the other hand, a statute offends separation of powers by giving the judiciary too little power where it usurps the court's inherent power to interpret the law even if the court does not have the power to conduct direct judicial review.[4] Even though a court does not have the power of direct

---

[4]With the phrase "direct judicial review" in this context, we mean to draw a distinction between cases in which a court has direct oversight over the record and can overturn factual findings (such as cases of administrative review or direct appeal from a trial verdict) and cases in which a court does not have such oversight, because the court is limited to deciding if an otherwise nonreviewable act was unconstitutional. Cf. Bigelow Group, Inc. v. Rickert, 377 Ill. App. 3d 165,

review over legislative decision making, it may nevertheless hear a challenge to a statute's constitutionality. See Gersch, 135 Ill. 2d at 398-99, citing Droste v. Kerner, 34 Ill. 2d 495, 498-99 (1966), for the proposition that the "General Assembly basically may enact any law, provided it is not inhibited by some constitutional provision." Likewise, though a court has no direct power to review acts of executive discretion, it may hear challenges to those acts on the grounds that the executive acted unconstitutionally or otherwise violated the law. See Bigelow, 377 Ill. App. 3d at 174-75 (even where a court has no direct power of judicial review over an act of another branch of government, it may review those acts for illegality).

With these principles in mind, we return to the statute at issue in this case. As discussed above, the legislature has the full authority to remove certain administrative determinations from, or add certain administrative determinations to, the ambit of judicial review (which comes normally via the Administrative Review Law). Accordingly, to the extent section 5--12012.1 was intended to remove the listed zoning decisions from the purview of the Administrative Review Law, it does not offend separation of powers principles.

As also discussed above, a statute can violate separation of powers principles where it confers too much power to the courts. An extended discussion of the supreme court's decision in Devine illustrates this principle. In Devine, the respondents challenged on separation of powers grounds a statute that provided "that objections to property tax assessments 'shall be heard de novo by the court.' " Devine, 181 Ill. 2d at 529, quoting 35 ILCS 200/23--15(b)(3) (West 1996). The supreme court framed its analysis by discussing two previous decisions regarding the constitutionality of

---

174-75 (2007) (even where a court has no direct power of judicial review over an act of another branch of government, it may review those acts for illegality).

statutes containing language superficially similar to the language at issue in Devine. In the first decision, West End Savings & Loan Ass'n v. Smith, 16 Ill. 2d 523 (1959), the supreme court had held unconstitutional a statute that provided that any person who objected to an "administrative decision regarding whether a savings and loan association could move from one location to another" (Devine, 181 Ill. 2d at 530) could " 'apply to the Circuit Court *** for an adjudication of the validity of the decision *** and the matter shall be tried de novo by the court' " (Devine, 181 Ill. 2d at 530, quoting Ill. Rev. Stat. 1957, ch. 32, par. 860). The court in West End applied the general rule that, " 'where authority has been conferred upon administrative agencies to perform functions of an executive nature, provisions for a trial de novo in courts of law violate the separation-of-powers principle' " (Devine, 181 Ill. 2d at 530, quoting West End, 16 Ill. 2d at 525), held that the statute vested the courts with " 'a supervisory power which is not limited to a review of the administrative action but extends to a redetermination of factual issues' " (Devine, 181 Ill. 2d at 531, quoting West End, 16 Ill. 2d at 525), and thus concluded that the statute unconstitutionally granted the courts power to determine questions, such as "the appropriate locations of the savings and loan associations[] and the appraisal of factors weighing on those decisions," that were executive (Devine, 181 Ill. 2d at 531).

Likewise, in the second case discussed in Devine, Borreson v. Department of Public Welfare, 368 Ill. 425 (1938), a statute that granted an applicant the right to "trial de novo" in the circuit court when, "by administrative decision, the applicant was denied welfare benefits under the Old Age Assistance Act" (Devine, 181 Ill. 2d at 531) impermissibly called upon the judiciary to " 'independently determine issues of fact or conduct and substitute its own judgment and discretion

for the judgment of a ministerial body' " (emphasis in original) (Devine, 181 Ill. 2d at 531, quoting Borreson, 368 Ill. at 432).

Turning back to the case before it, the supreme court in Devine held that the statute at issue differed from those in West End and Borreson in two equally significant respects. See Devine, 181 Ill. 2d at 532-33. First, the statute in Devine concerned property rights, which, unlike the matters in the two previous cases, was a matter normally "within the reviewing province of the courts" (Devine, 181 Ill. 2d at 532). Second, the statutes in West End and Borreson "permitted the circuit court to 'completely disregard the decision of the administrative agency' and to give the agency's decision 'no deference.' " Devine, 181 Ill. 2d at 533. "Because no deference was given to the administrative decisions, the statutes in West End and Borreson unlawfully permitted the circuit court to exercise the entire executive function of the administrative agency." Devine, 181 Ill. 2d at 533-34. The statute at issue in Devine, on the other hand, explicitly provided that, even though objections to tax assessments "shall be heard de novo," the administrative decision " 'shall be presumed correct and legal' " absent " 'clear and convincing evidence' " to the contrary. Devine, 181 Ill. 2d at 534, quoting 35 ILCS 200/23--15(b)(2) (West 1996). In this context, the court in Devine interpreted the legislature's use of the phrase "shall be heard de novo" to mean only that new evidence could be introduced, not that the trial court could hear the matter from precisely the same stance as had the administrative body. See Devine, 181 Ill. 2d at 535-36.

The supreme court's decision in Devine teaches that a statute offends separation of powers principles where it empowers the judiciary to perform the functions of another branch of government, either by giving the courts purview over matters outside their province (Devine, 181 Ill. 2d at 532) or by allowing them to exercise the entire function of the executive by wholly

reconsidering an administrative decision without any deference to the original determination (Devine, 181 Ill. 2d at 533-34). Under Devine, to the extent the statute here attempts to provide for an entirely new hearing in any judicial review of the listed zoning decisions, it offends the principle of separation of powers.

The question for us, then, is whether, based on the above discussion, we can glean a reasonable interpretation of the statute that renders it constitutional. We conclude that we can. In interpreting the statute, we must presume that the legislature knew the law in effect at the time it enacted section 5--12012.1. Randall v. Wal-Mart Stores, Inc., 284 Ill. App. 3d 970, 972-73 (1996). As discussed above, at the time the legislature enacted section 5--12012.1, courts had chosen between two types of review for the relevant categories of zoning decisions--administrative review under the Administrative Review Law or "legislative" review for arbitrariness as a matter of substantive due process (see Living Word Outreach, 196 Ill. 2d at 14)--before finally settling on the former option (see Klaeren, 202 Ill. 2d at 184-87). Against this backdrop, the language of section 5--12012.1, which invokes "de novo judicial review as a legislative decision" (emphasis added), indicates an intent to remove certain zoning decisions from the bounds of administrative review and instead choose the second, "legislative" type of review. As the legislature has the authority to dictate the type of review applicable to administrative decisions, this interpretation renders section 5--12012.1 constitutional.

The same language, "de novo review as a legislative decision" (emphasis added), also provides a necessary qualification on the "de novo" hearing the statute describes. As the supreme court held in Devine, wholly "de novo" judicial review of an administrative decision impermissibly invites the judiciary to perform executive functions, and thus separation of powers principles require

some limitation on any such "de novo" review. The "as a legislative decision" language invokes the alternative type of review described in Living Word Outreach: review "for arbitrariness as a matter of substantive due process." Living Word Outreach, 196 Ill. 2d at 14. This so-called "legislative" test prescribes the deference to agency decision making necessary under Devine, because it requires not that a court independently reevaluate facts or assert independent judgment, but rather that a court intervene only where there was no rational basis for the challenged decision, just as it would with a legislative enactment.[5] Though the "de novo" language indicates that, unlike typical administrative review, evidence outside the already-developed record may be presented to the trial court,[6] that evidence must bear on a much narrower question than is presented in typical administrative review. Since a trial court in this type of case must confine itself to the question of whether the challenged decision had any rational basis (just as it would with a legislative enactment), the trial court may not conduct even the limited direct factual review allowed under the Administrative Review Law (just as it could not with a legislative enactment). Thus, as indicated by our supreme court in Living

---

[5]The legislative history quoted above, which indicates that the legislature intended these decisions to be reviewed as any other legislative decision, comports with this view.

[6]Indeed, a court may not properly consider an as-applied challenge to a legislative act without receiving evidence to describe the application at issue. In re Parentage of John M., 212 Ill. 2d 253, 268 (2004) ("A court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact"); see In re R.C., 195 Ill. 2d 291, 299 (2001) ("One might wonder how we will determine whether the statute is unconstitutionally vague as applied *** when there has been no fact-finding in [this] case. The question answers itself--we cannot").

Word Outreach, the evidence received must bear on the court's review "for arbitrariness as a matter of substantive due process under the six-part test set forth in La Salle National Bank v. County of Cook, 12 Ill. 2d 40 (1957)." Living Word Outreach, 196 Ill. 2d at 14; see also Napleton, 374 Ill. App. 3d at 1105-06 (listing La Salle factors as well as additional factors considered by other courts). In short, the type of review imposed by section 5--12012.1 may be nominally "de novo" and may allow for presentation of new evidence, but is actually much less searching than the administrative review the statute curtails.[7] We adopt this reading of section 5--12012.1. This reading does not affect our initial conclusion that the statute applies only when a board adopts a zoning change and not when it rejects one.

We close with one final observation. As part of his argument that section 5--12012.1 should not apply, Baird argues that, since section 5--12012.1 was enacted after the commencement of this

---

[7]It seems from at least some of the legislative history that providing for a full de novo hearing was the General Assembly's goal. (We refer to this portion above when we characterize some of the legislative history as "muddled.") In his comments before apparently reading prepared remarks into the record, Representative Mathias extolled this statute as a means to give parties challenging a zoning decision "another opportunity," since those parties often come to zoning boards "ill-prepared" and without "understand[ing] their rights." 94th Ill. Gen. Assem., House Proceedings, April 25, 2006, at 5-6 (statements of Rep. Mathias). The remainder of the legislative history, however, indicates that the purpose of the statute was to alleviate a burden on local government, not to help individuals challenging local government. Though we do not rely on legislative history to interpret the "de novo review as a legislative decision" portion of the statute, we do note that this line of reasoning would render the statute unconstitutional under Devine, and we do not follow it.

suit, even if we construe section 5--12012.1 to apply to the type of zoning decision at issue here (which we do not), we cannot apply it retroactively to this case. Since we hold above that section 5--12012.1 does not apply here, we reach this argument only to clarify the interpretation we lay out above. As Baird notes, where, as here, a statute does not indicate whether it operates prospectively or retroactively, the temporal reach of the statute is prescribed by section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2006)), which provides that statutory amendments "that are procedural may be applied retroactively, while those that are substantive may not." Allegis Realty Investors v. Novak, 223 Ill. 2d 318, 331 (2006). Baird argues that section 5--12012.1 affects the due process rights of property owners by shielding certain zoning decisions from due process requirements.

We disagree that section 5--12012.1 would affect Baird's substantive constitutional rights if it applied in this case. As indicated above, even if the legislature can proscribe direct judicial review of administrative decisions, it oversteps its constitutional authority where it usurps the judiciary's power to interpret the law in cases the courts have the power to hear. Therefore, the legislature has no power to declare a particular procedure legislative or administrative where its true nature, as determined by the courts, shows the legislature's label to be incorrect. More importantly, the legislature does not have the power to use such labels to limit by statute the reach of constitutional due process protections. Since the legislature has no power to limit due process via statute, to the extent section 5--12012.1 was intended to shield the listed zoning decisions from the constitutional requirements of due process, it would offend separation of powers principles. We therefore do not adopt that interpretation, and we instead hold that section 5--12012.1 limits only the mode of direct judicial review over the listed zoning decisions, not the application of due process to any of those zoning decisions. Thus, we reject Baird's argument that, if section 5--12012.1 were to apply to this

situation, it could not be applied retroactively because it affects his substantive constitutional rights. In any event, we conclude, based on the statute's plain language, that it does not apply here.

Based on the above discussion, we answer the first certified question in the negative: a denial of a special-use permit by a county board is not subject to <u>de novo</u> judicial review as a legislative decision under section 5--12012.1 of the Code. Based on our answer to the first question, we do not reach the second certified question, except to note that in <u>Gallik</u>, where we held that a decision was administrative and thus that the Administrative Review Law applied, the Administrative Review Law would not have applied if the legislature had not so provided. See <u>Libertyville</u>, 378 Ill. App. 3d at 664 ("Acting administratively is necessary, but not sufficient, to trigger administrative review," because administrative review applies only where the legislature so provides). If the legislature removes a particular administrative decision from review under the Administrative Review Law, it would supersede <u>Gallik</u> on that point.

For the foregoing reasons, we answer the first certified question in the negative. We do not reach the second question.

Certified question answered; cause remanded.

ZENOFF and BURKE, JJ., concur.