# Illinois Official Reports

## Appellate Court

---

### *Paul v. County of Ogle*, 2018 IL App (2d) 170696

---

| | |
|---|---|
| Appellate Court Caption | WALTER PAUL, LINETTE DeHAVEN, and CURTIS DeHAVEN, Plaintiffs-Appellants, v. THE COUNTY OF OGLE, MIKE STUKENBERG, COLLEEN M. STUKENBERG, and STKE, LLC, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-17-0696 |
| Filed | April 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Ogle County, No. 16-MR-41; the Hon. John C. Redington, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James R. Griffin, of Schain Banks, Ltd., of Chicago, and Dan G. Fishburn, of Fishburn Whiton Thruman, of Freeport, for appellants.<br><br>Nicole M. Bauer and Ryan R. Stodden, of Plager, Krug, Bauer & Rudolph, Ltd., of Freeport, for appellee Styke, LLC.<br><br>No brief filed for other appellees. |

Panel                      JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Burke concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiffs—Walter Paul, Linette DeHaven, and Curtis DeHaven—appeal the trial court's order dismissing their amended complaint against defendants—the County of Ogle (county), Mike Stukenberg, Colleen M. Stukenberg, and STKE, LLC. Plaintiffs contend that the trial court erroneously held that they lacked standing to challenge the county's granting of a special-use permit on nearby property and that they did not allege a facial challenge, as required, to the ordinance approving the special use. We reverse and remand.

¶ 2        Plaintiffs' amended complaint alleged the following. The county had granted a special-use permit to operate a "Motor Carrier Facility" to store garbage trucks and dumpsters on property owned by the Stukenbergs and STKE, LLC. The property was located in an AG-1 agricultural zoning district. It was surrounded by private property containing unimproved farmland and rural home sites, farm buildings, and single-family homes. The surrounding property was generally being used consistently with the AG-1 zoning.

¶ 3        Paul owned property adjacent to the Stukenberg property, and the DeHavens owned property approximately 1250 feet away. Plaintiffs alleged that the proposed use would be unconstitutional as applied to their properties pursuant to the factors enumerated in *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40 (1957), and *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370 (1960). The complaint alleged that each of the *La Salle*/*Sinclair* factors militated against granting the proposed use.

¶ 4        Specifically, plaintiffs alleged that their properties would be devalued by the proposed use. Dumpsters would be stored near Paul's property. A staff report from the county planning and zoning department showed that approximately 30% of the Stukenbergs' property drained poorly and flooded frequently. Any runoff from dumpsters and garbage trucks would drain to the low-lying areas immediately adjacent to Paul's property. "All further drainage" from the Stukenbergs' property would drain across the Paul property and there was a potential for groundwater contamination. There would be increased noise and odors, as well as increased traffic.

¶ 5        The complaint further alleged that the proposed use did not promote the health, safety, or general welfare of the public. Moreover, the Stukenbergs' property was not suitable for the proposed use, as it was zoned AG-1, included a house, and was frequently flooded. According to the staff report, the property consisted of " 'prime farm land.' "

¶ 6        The complaint alleged that the property had not been vacant as zoned, having been purchased in 2016. It also alleged that there was no community need for the proposed use and that the use was inconsistent with the comprehensive plans of both the county and the Village

- 2 -

of Forreston.[1] Accordingly, count I sought a declaratory judgment that the ordinance approving the special use was unconstitutional.

¶ 7     Count II alleged that the county violated its own zoning ordinance in approving the special use. Plaintiffs alleged that a "Motor Carrier Facility," as defined by the county's zoning ordinance, allowed for the storage of trucks or buses but did not allow for the storage of dumpsters. Further, the ordinance provided that vehicle maintenance be conducted only on vehicles owned and operated by the owner of the property, whereas the vehicles to be stored on the property here were owned by another entity and would need to be serviced if they did not run properly. Count III sought to enjoin defendants from developing the site pursuant to the special-use permit.

¶ 8     Defendants moved to dismiss (735 ILCS 5/2-615 (West 2016)), arguing that *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296 (2008), required plaintiffs to mount a facial attack on the special-use ordinance, which they had failed to do and which, in any event, they lacked standing to do. The trial court agreed and dismissed the complaint with prejudice. Plaintiffs timely appeal.

¶ 9     Plaintiffs first contend that the trial court erred in concluding that they lack standing. Standing requires some injury to a legally cognizable interest. *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 419 (2005). The claimed injury, whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by granting the relief requested. *Id.* at 419-20.

¶ 10    We note that the cases are unclear as to what, if anything, a plaintiff must plead to establish standing in a case such as this one. Plaintiffs invoke the general rule that lack of standing is an affirmative defense that may be raised in a motion pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2016)). *Winnebago County Citizens for Controlled Growth v. County of Winnebago*, 383 Ill. App. 3d 735, 739 (2008). Generally, a plaintiff need not allege facts to establish his or her standing; rather, it is the defendant's burden to plead and prove a lack of standing. *Id.*

¶ 11    However, defendants rely on *Garner v. County of Du Page*, 8 Ill. 2d 155 (1956), where the court stated that "for a party to have standing in a court of equity to complain about the use of another's property, he has the burden of proving that he has suffered a special damage by reason of such use which differs from that suffered by the general public." *Id.* at 158-59. In that case, the complaint was not dismissed pretrial but, after trial, the court entered judgment for the defendant. The supreme court affirmed, holding that the plaintiffs, who lived 1½ and 3 miles from the proposed development, "failed to prove damage which is different from that suffered by the public generally and therefore have no standing to maintain the action." *Id.* at 159. Defendants also cite *Treadway v. City of Rockford*, 28 Ill. 2d 370 (1963). There, the court held that the plaintiffs proved a "sufficient special interest and damage to justify maintenance of this action," in that their property would be devalued by the construction of a proposed shopping center. *Id.* at 376.

¶ 12    In *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 176 (2002), the court again considered whether neighboring landowners had standing to complain about a proposed development. The court cited *Yusuf v. Village of Villa Park*, 120 Ill. App. 3d 533, 538 (1983),

---

[1] The subject property is within Forreston's 1½-mile planning "buffer zone." See 65 ILCS 5/11-12-5(1) (West 2016).

which held that allegations of a diminution in value and a loss of quiet enjoyment of property, caused by additional traffic and noise, were enough to confer standing on adjoining property owners. *Klaeren*, 202 Ill. 2d at 176. The *Klaeren* court found that identical allegations in the case before it, as well as testimony from a preliminary injunction hearing, were sufficient to convey standing. *Id.*

¶ 13    It is thus unclear whether a plaintiff challenging the granting of a special-use permit for a neighboring property has a duty to plead special damages. We need not resolve the issue here, however, as plaintiffs have clearly done so.

¶ 14    It is true that the complaint does not contain the magic words that plaintiffs will suffer damages different from those sustained by the general public, but defendants cite no case holding that such language is required. Indeed, the allegations in the complaint are very similar to those found to be sufficient to confer standing in cases such as *Klaeren.* See also *Whipple v. Village of North Utica*, 2017 IL App (3d) 150547. Plaintiffs allege that Paul's property is immediately adjacent to the subject tract and that the DeHavens' property is within 1250 feet of it. Based on proximity alone, common sense dictates that effects such as noise and odors will be felt more acutely on plaintiffs' properties than on those many miles distant. *Cf. Garner*, 8 Ill. 2d at 159.

¶ 15    Further, the complaint does contain allegations of harm specific to plaintiffs' properties. For example, plaintiffs allege that "run-off from the garbage dumpsters and garbage trucks will drain to the bottomland areas which are immediately adjacent to the Walter Paul property." Thus, plaintiffs, at least at this stage of the proceedings, have adequately pleaded that they will suffer damages different from those of the public generally.

¶ 16    Plaintiffs further contend that the trial court erred by holding that they had to mount a facial challenge to the ordinance granting the special-use permit. Defendants insist that *Napleton* mandates that plaintiffs mount a facial challenge to the ordinance and that their allegations, focused as they are on plaintiffs' particular circumstances, are insufficient to do so. They observe that section 5-12012.1 of the Counties Code (55 ILCS 5/5-12012.1 (West 2016)) provides that zoning decisions be reviewed *de novo* as legislative acts and *Napleton* stated that, where the effect of a successful challenge would be to invalidate the entire ordinance, the challenge is facial. They argue that, if plaintiffs succeed, the entire ordinance allowing the special use on the subject property would be invalid. Thus, defendants assert, plaintiffs must make a facial challenge. To fully understand the parties' arguments, we must examine in some detail the history of judicial challenges to decisions on special-use permits in Illinois.

¶ 17    By the time the supreme court decided *La Salle* in 1957, the right to challenge in court municipal decisions concerning special-use permits was already well established. Thus, the court was able to derive from the numerous earlier cases a list of considerations to apply in such cases, which have come to be known as the *La Salle* factors. See *La Salle*, 12 Ill. 2d at 46-47.[2]

¶ 18    Confusion arose over whether, in ruling on special-use permits, municipal bodies acted in a legislative or administrative capacity. As the answer to the question potentially affected the standard of review, the supreme court considered the conflicting views in *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 13-16

_____

[2]*Sinclair*, 19 Ill. 2d at 378, added two additional factors. For convenience, we refer to all the factors as the *La Salle* factors.

(2001). The court first acknowledged the "widely held" view that a legislative body acts in an administrative, rather than a legislative, capacity when ruling on an application for a special-use permit. *Id.* at 13. When a body acts administratively in ruling on a permit application, its decision is subject to general principles of administrative review, and thus the decision can be reversed only if it was without support in the record or was otherwise arbitrary. *Id.* The court then explained that Illinois has generally followed a different approach:

> "Although the clear weight of authority in the United States holds that a legislative body acts administratively when it rules on applications for special use permits, there is authority in this state which holds that the granting or denial of a permit application is a legislative act. For example, a line of cases from this court holds, with respect to the legislative bodies of counties, that the decision to grant or deny an application for a special use permit is a legislative act. [Citation.] When a legislative body acts in a legislative capacity in ruling on a permit application, its decision is not subject to principles of administrative review. Instead, the legislative body's decision is reviewed for arbitrariness as a matter of substantive due process under the six-part test set forth in [*La Salle*]." *Id.* at 14.

The court found "considerable force" to the view that such decisions should be considered administrative (*id.* at 15), but declined to decide the issue going forward, concluding that the result in the case before it would be the same under either test (*id.* at 16).

¶ 19    The court commented on the unique nature of a special-use-permit decision. It explained that "[i]n general, a 'special use' is a type of property use that is expressly permitted within a zoning district by the controlling zoning ordinance so long as the use meets certain criteria or conditions." *Id.* Thus, a special use " 'is a "permitted use" when allowed under a special permit. Thus, there has been a local legislative determination that the use, as such, is neither inconsistent with the public's health, safety, morals or general welfare, nor out of harmony with the town's general zoning plan.' " *Id.* at 17 (quoting 3 Edward H. Ziegler *et al.*, Rathkopf's The Law of Zoning and Planning § 41.08, at 41-34 (4th ed. 1992)); see also 83 Am. Jur. 2d *Zoning and Planning* § 974, at 814 (1992) ("Where a zoning ordinance authorizes a business as a special use, such authorization is tantamont [*sic*] to a legislative conclusion that the use is appropriate in the district.").

¶ 20    The following year, in *Klaeren*, the court answered the question it had left open in *Living Word Outreach*. It explicitly held that decisions on special-use permits were administrative rather than legislative actions. *Klaeren*, 202 Ill. 2d at 183.

¶ 21    In response to *Klaeren*, the legislature enacted section 5-12012.1, which currently provides:

> "Any decision by the county board of any county, home rule or non-home rule, in regard to any petition or application for a special use *** shall be subject to de novo judicial review as a legislative decision, regardless of whether the process in relation thereto is considered administrative for other purposes." 55 ILCS 5/5-12012.1(a) (West 2016).

¶ 22    In *Millineum Maintenance Management, Inc. v. County of Lake*, 384 Ill. App. 3d 638 (2008), a defendant argued, *inter alia*, that section 5-12012.1 violated separation-of-powers principles (Ill. Const. 1970, art. II, § 1) in that the legislature purported to direct the courts how to decide a particular type of case. We first held that "*de novo* judicial review" did not mean the type of review usually contemplated by the phrase "*de novo* review," but instead merely

permitted the introduction of new evidence that had not been considered by the legislative body. *Millineum Maintenance*, 384 Ill. App. 3d at 651-52. We further held that, in order to avoid a constitutional infirmity, we would interpret the statute to mean that "the evidence received must bear on the court's review 'for arbitrariness as a matter of substantive due process under the six-part test set forth in [*La Salle*].' " *Id.* at 653 (quoting *Living Word Outreach*, 196 Ill. 2d at 14).[3]

¶ 23      In *Napleton*, the plaintiff challenged a text amendment to the defendant village's zoning code to ban financial institutions on ground-floor spaces in the B-1 and B-3 zoning districts. *Napleton*, 229 Ill. 2d at 302. The plaintiff contended that the ordinance would diminish the value of her property by limiting the pool of potential tenants. *Id.* at 303. The court, after noting that the plaintiff had expressly proceeded with a facial challenge after agreeing with the village that her as-applied challenge was premature, went on to explain the difference between facial and as-applied challenges:

> "A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully [citations], because an enactment is facially invalid only if no set of circumstances exists under which it would be valid. [Citation.] The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity. [Citations.] In contrast, in an 'as-applied' challenge a plaintiff protests against how an enactment was applied in the particular context in which the plaintiff acted or proposed to act, and the facts surrounding the plaintiff's particular circumstances become relevant. [Citation.] If a plaintiff prevails in an as-applied claim, he may enjoin the objectionable enforcement of the enactment only against himself, while a successful facial attack voids the enactment in its entirety and in all applications." *Id.* at 305-06.

¶ 24      The court then considered the level of scrutiny to apply to the plaintiff's constitutional challenge, concluding that the traditional rational-basis test was appropriate. *Id.* at 308-09. The plaintiff contended, however, that *La Salle* mandated more exacting scrutiny. The court rejected this argument, noting that the plaintiff's challenge was facial whereas *La Salle* involved an as-applied challenge:

> "The difference between a facial and an as-applied zoning challenge is significant: a zoning ordinance that may be valid in its general aspects may nevertheless be invalid as to a specific parcel of property because the balance of hardships—the gain to the public in general against the detriment to the individual owner—overwhelmingly burdens the individual owner. [Citation.] In light of this possibility, the *La Salle* opinion set forth a list of factors that may be relevant in an as-applied challenge to assist in balancing the gain to the public against the specific burdens experienced by an individual property owner. In addition, as a result of the difference in focus of each type of challenge, the evidence needed to sustain a claim of invalidity will be different depending upon whether the challenge is facial—alleging a universal invalidity—or as applied to a particular property. We agree with the appellate court below that if the same evidentiary standard were used in each type of challenge, there would be no

---

[3]*Millineum Maintenance* was decided 10 weeks after the supreme court's opinion in *Napleton*, but cited only this court's opinion. *Millineum Maintenance*, 384 Ill. App. 3d at 643, 653 (citing *Napleton v. Village of Hinsdale*, 374 Ill. App. 3d 1098 (2007)).

difference between these challenges, leading to the absurd result that a zoning ordinance 'could never be generally valid but invalid as to a particular piece of property; instead, it would be either valid as to all or invalid as to all.' [Citation.] That the *La Salle* factors do not lend themselves to application to a facial challenge is evident not only from the fact that they focus upon the specific effect of the challenged ordinance upon a particular parcel of property, but also in that plaintiff suggests that this court modify these factors for application to a facial challenge, acknowledging that 'some of the *La Salle* factors that deal with the specifics of a parcel of property may not be relevant or applicable in a facial challenge, which *** maintain[s] that the ordinance at issue is invalid in all applications.' " *Id.* at 318-19.

¶ 25    Finally, in *Our Savior Evangelical Lutheran Church v. Saville*, 397 Ill. App. 3d 1003 (2009), the plaintiff challenged the denial of a special-use permit. Quoting the above passage, we held that the *La Salle* factors continued to govern as-applied challenges such as the one in question. *Id.* at 1029.

¶ 26    Here, defendants seize on the statement that "a successful facial attack voids the enactment in its entirety" (*Napleton*, 229 Ill. 2d at 306) and argue that, because the ordinance in question applies only to the subject property, a successful challenge will "void[ ] the enactment in its entirety." They argue, in essence, that all challenges to the granting of a special-use permit are facial because the effect of such a challenge is to void the ordinance entirely. This argument is fatally flawed for several reasons.

¶ 27    First, defendants fail to account for the unique nature of special-use permits, which, by design and definition, are granted on a case-by-case basis. The supreme court recognized the unique nature of such proceedings in *Living Word Outreach*, where it observed that they were functionally equivalent to administrative proceedings and noted that a majority of jurisdictions consider them to be such. In *Millineum Maintenance*, we held that, despite the legislature's characterization of such proceedings as legislative, courts should continue to review them as before, using the *La Salle* factors, and we reaffirmed that conclusion in *Our Savior*.

¶ 28    Second, defendants err in assigning the distinction between facial and as-applied challenges talismanic significance. The United States Supreme Court has cautioned that "[t]he distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010); see also Richard H. Fallon Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1327-28 (2000) ("In order to raise a constitutional objection to a statute, a litigant must always assert that the statute's application to her case violates the Constitution. But when holding that a statute cannot be enforced against a particular litigant, a court will typically apply a general norm or test and, in doing so, may engage in reasoning that marks the statute as unenforceable in its totality." (Emphasis omitted.)).

¶ 29    An Illinois Supreme Court justice has observed:

"The difficulty may lie in the doctrine itself. One commentator has charged that 'categorizing constitutional cases into "facial" and "as-applied" challenges, and relying on these categories to shape doctrine and inform case outcomes, is an inherently flawed and fundamentally incoherent undertaking.' [Citation.] Another has lamented that the 'distinction between as-applied and facial challenges may confuse more than it illuminates' and argued that the distinction between facial and as-applied challenges

should be eliminated altogether." *People v. One 1998 GMC*, 2011 IL 110236, ¶ 85 (Karmeier, J., specially concurring).

¶ 30    But more fundamentally, *Napleton* itself emphatically rejected the reading defendants assign to it. Far from rejecting the *La Salle* factors as applicable to cases that—like this one—must necessarily be decided on an as-applied basis, the court held that the *La Salle* factors can be "relevant in an as-applied challenge" and labeled "absurd" the suggestion that a zoning ordinance could never be invalid as applied to a particular piece of property. *Napleton*, 229 Ill. 2d at 318-19. Defendants cite the above-quoted language from *Napleton* in support of their argument that the *La Salle* factors do not apply to a facial challenge but fail to grasp the bigger point that *La Salle* itself involved a special-use permit. Defendants thus advance the paradoxical contention that the supreme court specifically endorsed the *La Salle* factors as appropriate for special-use cases, precisely because they focus on the parties' specific circumstances, but simultaneously forbade their use in special-use cases because all such challenges must be facial.

¶ 31    Moreover, to agree with defendants would be to effectively leave neighboring landowners without a remedy—something Illinois courts have said they have had for more than 60 years.[4] The only way for a neighboring landowner to succeed on a facial challenge would be to argue that the special use is not appropriate anywhere in the relevant zoning district. However, as *Living Word Outreach* explained, the very existence of the special use within the zoning district demonstrates the legislative body's conclusion that it *is* appropriate in the zoning district if certain conditions are met. *Living Word Outreach*, 196 Ill. 2d at 17.

¶ 32    *Napleton* did not purport to overrule *Living Word Outreach*, *Klaeren*, or other cases applying the *La Salle* factors to cases of this type. Those cases explain that special-use permits are, by their nature, decided on a case-by-case basis and are thus the functional equivalent of administrative decisions regardless of how they are categorized for other purposes. It is only because of the fact-specific nature of the decision that the "entire ordinance" will be invalidated by a successful challenge. Cases from other districts since *Napleton* have continued to apply the *La Salle* factors to neighbor challenges. See *Whipple*, 2017 IL App (3d) 150547; *Robrock v. County of Piatt*, 2012 IL App (4th) 110590. Thus, here, as the ordinance itself is fact-specific, plaintiffs' challenge to it is properly fact-specific as well.[5]

¶ 33    Citing *Conaghan v. City of Harvard*, 2016 IL App (2d) 151034, defendants further contend that section 5-12012.1 does not create a cause of action. *Conaghan* considered a parallel provision in the Illinois Municipal Code (65 ILCS 5/11-13-25 (West 2016)), holding that it did not create a new cause of action but merely imposed standards for preexisting actions. *Conaghan*, 2016 IL App (2d) 151034, ¶ 73. In *Conaghan*, the plaintiffs pleaded no other basis for relief. See *id.* ¶ 74. Here, although the complaint states that it is brought under section 5-12012.1, it also invokes the declaratory judgment provision of the Civil Practice Law (735

_____

[4]Given that the right to challenge the granting of special-use permits for neighboring properties is rooted in due process, it is unlikely that the remedy could be completely abolished. However, as plaintiffs do not make the argument that due process requires any particular remedy, we do not consider it further.

[5]We do not say that there could never be a distinction between facial and as-applied challenges to special-use permits. It is possible that an ordinance could affect different properties differently. Here, at least at this stage of the proceedings, that is not an issue.

ILCS 5/2-701 *et seq.* (West 2016)) as well as *La Salle*. This fact distinguishes this case from *Conaghan*. In neither *Our Savior* nor *Millineum Maintenance* did we hold that section 5-12012.1 was a bar to proceeding with a traditional action for review of a special-use-permit decision pursuant to the *La Salle* factors. *Our Savior*, 397 Ill. App. 3d at 1029; *Millineum Maintenance*, 384 Ill. App. 3d at 653.

¶ 34 Defendants make some additional arguments that plaintiffs' allegations are insufficient. They contend that the allegations are conclusory. A pleading that merely paraphrases the elements of a cause of action in conclusory terms is insufficient. *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1065 (2005). On the other hand, a plaintiff need not set out his or her evidence in the complaint. A fact is well pleaded if a plaintiff has clearly set out the *ultimate* fact he or she intends to prove. *Id.* A motion to dismiss under section 2-615 raises issues of law; we therefore review the dismissal *de novo*. *Id.*

¶ 35 Here, plaintiffs' allegations include ultimate facts. For example, the complaint alleges that the value of Paul's property will be diminished by the proposed use and lists five specific ways in which that will occur. It alleges that "run-off from the garbage dumpsters and garbage trucks will drain to the bottomland areas which are immediately adjacent to the Walter Paul Property. All further drainage from the Subject Property drains over and across the Walter Paul Property. There is a potential for ground water contamination on the Walter Paul Property." This seems to be reasonably specific, and defendants do not specify what additional information they require.

¶ 36 Plaintiffs' allegations are similar to those found sufficient in similar cases. In *Whipple*, for example, the plaintiffs challenged the granting of a permit to operate a mine on a nearby property. Their complaint closely tracked the *La Salle* factors, much like the complaint here. The reviewing court held that the lower court erred in dismissing it. *Whipple*, 2017 IL App (3d) 150547, ¶ 53.

¶ 37 Defendants further contend that plaintiffs' allegations are "speculative." In a case of this type, allegations will always be speculative in the sense that the proposed use has not commenced, so it would be impossible to calculate with mathematical precision the damages to the plaintiffs' properties. As the First District has observed, "Defendants call plaintiffs' allegations of harm speculative, but plaintiffs respond that any zoning case involves expert projections that an opponent will wish to term speculative. Plaintiffs correctly add that, at the pleading stage, they have not yet had a chance to prove what defendants contend is speculative." *Rodriguez v. Henderson*, 217 Ill. App. 3d 1024, 1035 (1991).

¶ 38 Defendants argue that, even if the trial court erred in dismissing the entire complaint, its dismissal of count II should nevertheless be affirmed because the count fails to state a claim. See *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007) (reviewing court may affirm on any basis supported by the record). In count II, plaintiffs allege that the county failed to follow its own zoning ordinance in granting the special-use permit. Defendants' argument on this point consists only of a brief general assertion that this count improperly seeks administrative review of a legislative decision. We disagree. A municipality must follow its own valid ordinances. *People ex rel. J.C. Penney Properties, Inc. v. Village of Oak Lawn*, 38 Ill. App. 3d 1016, 1019 (1976). If a municipality violates its own valid ordinance, its action is illegal, and the courts may enjoin it. *Tierney v. Village of Schaumburg*, 182 Ill. App. 3d

1055, 1059 (1989).[6] As we reject defendants' alternative basis for affirming it, we reverse the dismissal of count II.

¶ 39 Plaintiffs assert that count III, seeking to enjoin the proposed use, likewise was improperly dismissed. A party seeking a permanent injunction must allege that he or she has a clear and ascertainable right that needs protection, there is no adequate remedy at law, and he or she will suffer irreparable harm if such relief is not granted. *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 688 (2010). Injunctive relief can be appropriate to prevent a prospective use of neighboring property, at least where that use would constitute a nuisance. See *Whipple*, 2017 IL App (3d) 150547, ¶ 45; *Helping Others Maintain Environmental Standards*, 406 Ill. App. 3d at 689.

¶ 40 As with count II, the trial court did not specifically rule on the sufficiency of this count. Defendants' argument that it is insufficient largely restates their previous arguments about the complaint in general. Thus, we do not consider whether plaintiffs' specific allegations are sufficient to state a cause of action for injunctive relief. We reverse the dismissal of this count as well.

¶ 41 The judgment of the circuit court of Ogle County is reversed and the cause is remanded.

¶ 42 Reversed and remanded.

---

[6]There is some authority that the rule that municipalities must follow their own ordinances does not apply to home-rule units, which many counties are. However, the parties do not raise this argument, and the record contains no information on whether the county here is a home-rule unit. Thus, we do not consider the issue further.