SIXTH DIVISION
March 5, 2010

Nos. 08-2318 & 09-0306 cons.

| | | |
|---|---|---|
| CONDOMINIUM ASSOCIATION OF COMMONWEALTH PLAZA, an Illinois Not-For-Profit Corporation; SUHAIL AL CHALABI; VIRGINIA M. HARDING; and DARREN MOSS, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| THE CITY OF CHICAGO, a Municipal Corporation; THE CHICAGO PLAN COMMISSION OF THE CITY OF CHICAGO; LORI T. HEALEY, Commissioner, Department of Planning and Development; RESURRECTION HEALTH CARE, an Illinois Not-For-Profit Corporation; and SAINT JOSEPH HOSPITAL, an Illinois Not-For-Profit Corporation; | ) ) ) ) ) ) ) ) ) | No. 06 CH 22757    Honorable Sophia Hall, Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

| | | |
|---|---|---|
| CONDOMINIUM ASSOCIATION OF COMMONWEALTH PLAZA, an Illinois Not-For-Profit Corporation; SUHAIL AL CHALABI; VIRGINIA M. HARDING; and DARREN MOSS, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| v. | ) ) | |
| THE CHICAGO PLAN COMMISSION OF THE CITY OF CHICAGO, LINDA SEARL, Vice Chairman and Acting Chairman; LORI T. HEALEY, Secretary, and Commissioner of the Department of Planning and Development; ALDERMAN WILLIAM J.P. BANKS, ALDERMAN EDWARD M. BURKE, ALLISON S. DAVIS, MAYOR RICHARD M. DALEY, LEON D. FINNEY, JR., DORIS B. HOLLEB, CAROLE BROWN, AMRISH K. MAHAJAN, GEORGE W. MIGALA, ALDERMAN BURTON | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 06 CH 12361    Honorable Sophia Hall, Judge Presiding. |

Nos. 08-2318 & 09-0306 cons.

F. NATARUS, JOHN H. NELSON, NANCY )
A. PACHER, ALDERMAN MARY ANN )
SMITH, ALDERMAN BERNARD L. STONE, )
ALDERMAN REGNER "RAY" SUAREZ, )
members of the Commission; RESURRECTION )
HEALTH CARE, an Illinois Not-For-Profit )
Corporation; SAINT JOSEPH HOSPITAL, an )
Illinois Not-For-Profit Corporation; )
 )
     Defendants-Appellees. )

JUSTICE JOSEPH GORDON delivered the opinion of the court:

This case consists of the consolidation of two appeals from actions brought by the Condominium Association of Commonwealth Plaza (Commonwealth Plaza), Suhail al Chalabi, Virginia M. Harding, and Darren Moss, both alleging improper land usage by Resurrection Health Care (Resurrection) and St. Joseph Hospital (St. Joseph) (collectively, the hospital defendants) in connection with the St. Joseph campus, which is located within 250 feet of plaintiffs' property.

In the first action (docket No. 06 CH 22757), plaintiffs challenged the validity of a zoning amendment passed by the City of Chicago in favor of the hospital defendants. On July 28, 2006, the Chicago city council passed an ordinance changing the zoning classification of certain land around the St. Joseph campus to allow Resurrection to conduct further development of the campus, including the construction of a medical office building, pursuant to an Institutional Planned Development (IPD). Plaintiffs brought suit against the hospital defendants as well as against the city of Chicago, the Chicago Plan Commission (Plan Commission), and Commissioner Lori T. Healey (collectively, the city defendants), seeking a judicial declaration that the IPD ordinance was invalid. Plaintiffs contended that the IPD ordinance was in violation of the

-2-

Nos. 08-2318 & 09-0306 cons.

Chicago zoning ordinance, in that the proposed office building exceeded the floor plan density limitations of the preexisting zoning classification, the building was not a permitted use of the property, and the IPD ordinance failed to require that construction begin within a certain timeframe to prevent lapse of the rezoning. They also contended that they were denied procedural and substantive due process in connection with the Plan Commission's hearing on the ordinance. The trial court granted summary judgment for defendants on plaintiffs' first contention, finding that lack of conformity with Chicago zoning ordinances would not justify invalidation of the IPD. The court additionally found that there was no just reason to delay enforcement or appeal of its order under Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)).

In the second action (docket No. 06 CH 12361), plaintiffs sought administrative review of a resolution adopted by the Plan Commission approving an application made by Resurrection under the Lake Michigan and Chicago Lakefront Protection Ordinance (Chicago Municipal Code §16–4 *et seq.* (eff. October 24, 1973)) (Lakefront Protection Ordinance) to obtain permission for its planned developments on the St. Joseph campus. Plaintiffs further contended that Resurrection was operating a parking lot in violation of a 1982 special use permit which required that the parking lot be closed and locked after 8 p.m. The trial court dismissed the count concerning the operation of the parking lot and certified it for appeal as well.

Plaintiffs appeal from both of these orders, and their appeals have been consolidated. For the reasons that follow, we affirm the judgment of the trial court.

## I. BACKGROUND

Nos. 08-2318 & 09-0306 cons.

## A.  06 CH 22757

Plaintiffs' complaint in the first of the two consolidated cases now before us, which they filed on October 24, 2006, alleged the following facts that are not in dispute.  On March 12, 2004, Resurrection filed an application with the city of Chicago, requesting that the city council change the zoning classification of certain specified land around the St. Joseph campus in order to allow for implementation of an IPD on the property.  Additionally, on February 18, 2004, Resurrection applied to the Plan Commission for approval of its development plans under the Lakefront Protection Ordinance (Chicago Municipal Code §16–4 *et seq.* (eff. October 24, 1973)), which provides that any physical change made to property in Chicago's lakefront district must first be approved by the Plan Commission.  In its proposal, Resurrection lists "long-term master campus planning" as well as a number of short-term projects, including multiple building additions, interior renovations, and 1 1/2 additional floors of parking structure.  On May 19, 2006, the Plan Commission held a public hearing on these two applications.  The Plan Commission then granted approval to Resurrection's plans under the Lakefront Protection Ordinance and issued a recommendation to the city council committee on zoning that Resurrection's rezoning application be granted.  Subsequently, the city council of Chicago voted to enact an ordinance that changed the zoning classification of the subject property in accordance with Resurrection's request and approved the requested IPD.

Plaintiff al Chalabi is the vice president of Commonwealth Plaza, which owns property within 250 feet of the rezoned property, and plaintiffs Harding and Moss are owners of separate properties at that same address.  Together with Commonwealth Plaza itself, they brought suit

under section 11-13-25 of the Illinois Municipal Code (65 ILCS 5/11-13-25 (West 2006)), seeking a judicial declaration that the IPD ordinance passed by the city council was void for two reasons. First, under the heading "The Challenged IPD Ordinances are Void as Arbitrary, Capricious, and Unreasonable," they contended that the ordinance was invalid because it did not comply with existing zoning ordinances. Specifically, they alleged that the ordinance did not substantially comply with the floor area ratio requirements set out under section 17-8-0901 of the Chicago Zoning Ordinance (Chicago Zoning Ordinance §17-8-0901 (2006)); that it did not comply with the terms of the Lakefront Protection Ordinance; that it misstates the correct procedure for obtaining approval for subsequent construction proposals; that it did not require construction to begin within the time limits set out in section 17-13-0612 of the Chicago Zoning Ordinance (Chicago Zoning Ordinance §17-13-0612 (2006)) so as to prevent lapse of the rezoning; and that it "does not provide any valid or reasonable justification" for the rezoning. Second, under the heading "Plaintiffs Were Deprived of Procedural and Substantive Due Process," plaintiffs contended that they were deprived of their due process rights during the Plan Commission's hearing on May 19, 2006, because their witnesses and representatives were harassed by Commission members and they were not reasonably afforded the right of cross-examination.

Plaintiffs filed a motion styled "Plaintiffs' Motion for Partial Summary Judgment," contending that the court should hold the IPD ordinance void as a matter of law based on its alleged noncompliance with the Chicago Zoning Ordinance. Initially, on December 14, 2007, the trial court granted plaintiffs' motion, finding that the IPD "is in violation of the Chicago zoning

ordinance and is void." In particular, it found that the IPD conflicted with the Chicago Zoning Ordinance in three ways: the timetable for construction did not satisfy the lapse provision in section 17-13-0612 of the ordinance, the proposed office building had an unacceptable floor area ratio under section 17-13-0612 of the ordinance, and the proposed office building was not a permitted use of the property under the preexisting zoning classification.

On January 14, 2008, the city and hospital defendants separately filed motions for reconsideration of the trial court's order. They contended that under *Landmarks Preservation Council v. City of Chicago*, 125 Ill. 2d 164, 531 N.E.2d 9 (1988), the court lacked authority to invalidate an ordinance passed by a home rule municipality such as the city of Chicago on grounds that the municipality failed to follow its own self-imposed procedures in enacting the ordinance.[1] On April 23, 2008, after hearing oral arguments by the parties, the trial court granted defendants' motions for reconsideration. Though it declined to reconsider its previous statutory analysis finding inconsistencies between the IPD and the Chicago Zoning Ordinance, it nevertheless agreed to rehear the case on the limited issue of whether such inconsistencies were proper grounds for judicial invalidation of the ordinance.

After the trial court granted the motion for reconsideration, on June 3, 2008, plaintiffs moved for leave to amend their complaint to add an allegation that defendants "violated plaintiffs'

---

[1] Under the 1970 constitution, a home rule unit is defined as any municipality with a population of over 25,000, or any county with a chief executive officer elected by the electors of the county. Ill. Const. 1970, art. VII, §6(a). Chicago's status as a home rule municipality is not disputed by the parties.

constitutional rights under the due process clauses of the United States and Illinois Constitutions." The court granted their motion.

Defendants then filed a joint motion seeking partial summary judgment on their own behalf regarding the inconsistencies alleged by plaintiffs between the IPD and the Chicago Zoning Ordinance. On August 20, 2008, the trial court granted this motion, reasoning as follows:

"The Court, having previously ruled that Institutional Planned Development 1019 (the 'IPD') is not in compliance with the Chicago Zoning Ordinance, but that based upon the decisions in *Landmarks Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164 (1988), *Hanna v. City of Chicago*, 331 Ill. App. 3d 295 (1st Dist. 2002), and *Napelton* [*sic*] *v. Village of Hinsdale*, 2008 WL 227885 (June 5, 2008), this lack of compliance did not support an order invalidating the IPD, hereby finds that there is no genuine issue of material fact remaining as to whether such a lack of compliance, as a matter of law, violates any provision of a state or federal statute or constitution, including the due process clauses of both the United States and Illinois constitutions, as well as 65 ILCS 5/11-13-25, solely on account of its purported non-compliance with the Chicago Zoning Ordinance."

The trial court found that, pursuant to Rule 304(a) (210 Ill. 2d R. 304(a)), there was no just reason for delaying either enforcement or appeal of the order. The trial court also granted plaintiffs' motion to stay the proceedings pending this appeal.

### B. 06 CH 12361

The second case currently before us was initiated on June 21, 2006, when plaintiffs filed a

"complaint for administrative review, to enjoin illegal use of property, and for other relief" against the Plan Commission and the hospital defendants. The complaint consisted of two counts. In count I, which is not at issue in the instant appeal, plaintiffs sought to void the Plan Commission's May 19, 2006, administrative decision to approve Resurrection's development proposal as being in conformance with the provisions of the Lakefront Protection Ordinance. (By contrast, in the first case, plaintiffs sought to void the city council's parallel legislative decision to approve the IPD.) In support of this count, plaintiffs alleged that at the May 19 hearing, no competent evidence was presented to show that the proposal was in line with the Lakefront Protection Ordinance, and the Plan Commission did not recite any findings of fact in approving the proposal. In count II, plaintiffs contended that the hospital defendants were using a parking lot, known as the Surf Street Lot, in violation of the conditions set forth in a 1982 special use permit. Plaintiffs alleged that the special use permit limited the parking lot's hours of operation from 6:30 a.m. to 8 p.m. and required that it be locked at all other times. They further alleged that the hospital defendants were keeping the lot open and unlocked past 8 p.m. and thereby disturbed the "peace, quiet, health, and comfort of Plaintiffs" in an unspecified fashion. Accordingly, plaintiffs sought to enjoin the hospital defendants from continuing to use the parking lot in violation of the special use permit.

By way of answer, the Plan Commission filed the record of the administrative proceedings that plaintiffs sought to review. The record reflects that St. Joseph held more than 30 meetings with community members between August 2003 and June 2006 in order to "address community concerns about the hospital's proposed planned development." It further states that "Alderman

Tunney [whose ward contains the subject property] attended almost every one of these meetings. In addition, representatives of the City's Planning and Transportation Departments participated in many of these meetings."

The hospital defendants filed a motion under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2009)) to dismiss count II, contending that there was no violation because the IPD ordinance passed by the city council validly superseded the special use permit in question. On May 8, 2007, the trial court issued an order granting their motion to dismiss count II, and it subsequently certified this ruling for appeal under Rule 304(a) (210 Ill. 2d R. 304(a)). Count I remains pending below.

As both appeals concern the validity of the ordinance approving the hospital defendants' IPD, they have been consolidated.

## II.  ANALYSIS

On appeal, plaintiffs contend that the city's passage of an ordinance that contradicted the terms of its earlier zoning ordinance was a "per se" violation of their due process rights as promised by the Illinois and United States constitutions and by section 11-13-25(b) of the Illinois Municipal Code, which provides, "The principles of substantive and procedural due process apply at all stages of the decision-making and review of all zoning decisions." 65 ILCS 5/11-13-25(b) (West 2006). Defendants, on the other hand, argue that under our supreme court's decision in *Landmarks*, 125 Ill. 2d at 179-80, 531 N.E.2d at 15-16, which was cited by the trial court in rendering its decision, an ordinance enacted by a home rule municipality may not be invalidated merely based on the municipality's failure to follow its own self-imposed regulations.

Nos. 08-2318 & 09-0306 cons.

We agree with defendants that *Landmarks* and its progeny are controlling in this case. As shall be developed below, despite the due process veneer that plaintiffs have attempted to place upon their claim, their underlying complaint is still Chicago's failure to comply with its own self-imposed regulations in approving the hospital defendants' IPD and, as such, is insufficient to evade the application of *Landmarks* to the present case.

The contention that an ordinance enacted by a home rule municipality may be invalidated upon judicial review due to an alleged violation of the municipality's own rules was squarely rejected by our supreme court in *Landmarks*. The plaintiffs in that case sought a declaration that a Chicago ordinance rescinding the landmark status of a certain building was invalid based on certain alleged procedural shortcomings in the passage of the ordinance. *Landmarks*, 125 Ill. 2d at 173-74, 531 N.E.2d at 12-13. The court affirmed the dismissal of plaintiffs' complaint. *Landmarks*, 125 Ill. 2d at 180, 531 N.E.2d at 15-16. As a threshold matter, it stated that under the 1970 Illinois Constitution, the city of Chicago is a home rule unit and therefore has broad authority to govern its own affairs:

> " 'Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.' " *Landmarks*, 125 Ill. 2d at 178, 531 N.E.2d at 15, quoting Ill. Const. 1970, art. VII, §6(a).

The 1970 Illinois Constitution further provides that the powers and functions of home rule units shall be construed broadly. Ill. Const. 1970, art. VII, §6(m); see *Landmarks*, 125 Ill. 2d at 178,

Nos. 08-2318 & 09-0306 cons.

531 N.E.2d at 15. The passage of the challenged ordinance was "the performance of a legislative function authorized by the home rule provisions of the Illinois Constitution." *Landmarks*, 125 Ill. 2d at 180, 531 N.E.2d at 16.

Bearing this broad grant of authority in mind, the *Landmarks* court declined to consider whether, as plaintiffs alleged, the city had transgressed its own requirements in passing the ordinance at issue. The court explained:

" 'This court cannot handle matters which in effect are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by that body itself. *** We have authority to invalidate legislation adopted by the city council only upon grounds that the enactment violates a provision of the Federal or State constitutions or violates the mandate of a State or Federal statute.' " *Landmarks*, 125 Ill. 2d at 179, 531 N.E.2d at 15, quoting *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 404, 519 N.E.2d 447, 452-53 (1988), quoting *Chirikos v. Yellow Cab Co.*, 87 Ill. App. 3d 569, 574, 410 N.E.2d 61, 65 (1980).

Thus, in the absence of any such violation, plaintiffs' challenge to the ordinance could not stand. *Landmarks*, 125 Ill. 2d at 179-80, 531 N.E.2d at 15-16. In this regard, the *Landmarks* court noted that plaintiffs had not alleged any independent constitutional violation by the city council, such as a violation of constitutional guarantees of equal protection, procedural due process, or substantive due process; rather, their claim rested upon the alleged inconsistency between the challenged ordinance and the Chicago Municipal Code, an issue which the court could not reach. *Landmarks*, 125 Ill. 2d at 180, 531 N.E.2d at 16.

-11-

Nos. 08-2318 & 09-0306 cons.

In rendering its decision, the *Landmarks* court relied upon its prior decision in *Gasoline Dealers*, which it found to be controlling. The *Gasoline Dealers* plaintiffs challenged the validity of a fuel tax ordinance, contending that its adoption was improper because it was improperly removed from committee. *Gasoline Dealers*, 119 Ill. 2d at 403, 519 N.E.2d at 452. The court declined to review that contention, since the alleged fault consisted merely of a failure by the city council to follow its own rules. *Gasoline Dealers*, 119 Ill. 2d at 404, 519 N.E.2d at 452-53. The court further found that plaintiffs had not demonstrated that the ordinance violated the Illinois constitution or any state statute. *Gasoline Dealers*, 119 Ill. 2d at 404-05, 519 N.E.2d at 453. It therefore affirmed the circuit court's grant of summary judgment in favor of defendants. *Gasoline Dealers*, 119 Ill. 2d at 405, 519 N.E.2d at 453.

The facts of *Chirikos*, 87 Ill. App. 3d 569, 410 N.E.2d 61, which is cited with approval in both *Landmarks* and *Gasoline Dealers*, are also instructive in this regard. The *Chirikos* plaintiff sought to invalidate a taxi fare increase amendment passed by the city of Chicago, alleging that its enactment violated certain requirements and procedures contained in the existing city ordinance. *Chirikos*, 87 Ill. App. 3d at 573-74, 410 N.E.2d at 65. Plaintiff also claimed that he was "denied due process of law because of failure of the city council to act in accordance with established legal requirements enacted by the council." *Chirikos*, 87 Ill. App. 3d at 574, 410 N.E.2d at 65. The court affirmed the dismissal of plaintiff's complaint. *Chirikos*, 87 Ill. App. 3d at 580, 410 N.E.2d at 69. After reciting the principle of law quoted above, the court concluded: "The city council was not bound by its own previous ordinances or requirements. The council had clear right to repeal the then existing ordinance or to amend it as it saw fit." *Chirikos*, 87 Ill. App. 3d

Nos. 08-2318 & 09-0306 cons.

at 574, 410 N.E.2d at 65.

A number of subsequent cases have followed the lead of *Landmarks*. See *City of Elgin v. County of Cook*, 169 Ill. 2d 53, 63, 660 N.E.2d 875, 881 (1995) (holding that, even if county failed to follow its own preexisting ordinances in enacting landfill ordinance, the landfill ordinance could not be successfully challenged upon that ground); *Hanna v. City of Chicago*, 331 Ill. App. 3d 295, 771 N.E.2d 13 (2002) (upholding dismissal of count in which plaintiff claimed that Chicago ordinance downzoning his property was void because it failed to consider the factors required by the Chicago zoning ordinance), overruled on other grounds by *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 309-10, 891 N.E.2d 839, 847-48 (2008). More recently, in *Dunlap v. Village of Schaumburg*, 394 Ill. App. 3d 629, 915 N.E.2d 890 (2009), plaintiff challenged the validity of a zoning variance that the Village of Schaumburg, a home rule unit, granted to the defendant landowners. She claimed that the variance was invalid because defendants had not made a showing of hardship as was required under the village code. *Dunlap*, 394 Ill. App. 3d at 646, 915 N.E.2d at 904. We disagreed, finding that a legislative body, such as the village, was not required to strictly conform to its own standards in enacting a zoning ordinance as long as the resulting ordinance represented a rational means to accomplish an otherwise legitimate legislative purpose. *Dunlap*, 394 Ill. App. 3d at 646, 915 N.E.2d at 904.

Defendants argue that, just as in *Landmarks* and its progeny, the instant case concerns a home rule municipality exercising its home rule authority in a legislative capacity, so plaintiffs' claim, which is " 'based upon alleged failure to follow requirements imposed by that body itself' " (*Landmarks*, 125 Ill. 2d at 179, 531 N.E.2d at 15, quoting *Gasoline Dealers*, 119 Ill. 2d at 404,

Nos. 08-2318 & 09-0306 cons.

519 N.E.2d at 452, quoting *Chirikos*, 87 Ill. App. 3d at 574, 410 N.E.2d at 65), must necessarily fail. Indeed, it is established that the power to enact zoning ordinances, such as the one in the instant case, falls within the 1970 Constitution's broad grant of home rule authority as discussed in *Landmarks*. *Thompson v. Cook County Zoning Board of Appeals*, 96 Ill. App. 3d 561, 569, 421 N.E.2d 285, 292 (1981). That is, home rule municipalities under the 1970 constitution have full authority to zone, rather than being constrained by state statute, provided that their zoning does not violate constitutional standards. Ill. Const. 1970, art. VII, §6(a); see *Dunlap*, 394 Ill. App. 3d at 643-46, 915 N.E.2d at 902-04 (discussing the wide sweep of constitutional home rule authority with regard to zoning decisions).

Plaintiffs nevertheless seek to distinguish the *Landmarks* line of cases, arguing that it is inapposite because no constitutional issue was raised in *Landmarks*. By contrast, in the present case, plaintiffs have alleged a violation of their due process rights under the Illinois and United States constitutions. In this vein, plaintiffs cite *Treadway v. City of Rockford*, 24 Ill. 2d 488, 182 N.E.2d 219 (1962), in which the court stated:

"It is obvious that when a statute prescribes certain steps as conditions to the enactment of an ordinance these steps must be substantially complied with, and we have further held that where a general zoning ordinance includes additional procedural requirements for its amendment, not inconsistent with those of the statute, these requirements must also be complied with." *Treadway*, 24 Ill. 2d at 496, 182 N.E.2d at 224, citing *Cain v. Lyddon*, 343 Ill. 217, 175 N.E. 391 (1931).

*Treadway*, as the instant case, dealt with a challenge to a city zoning regulation. The

-14-

plaintiffs in *Treadway* challenged an ordinance passed by the city of Rockford changing the zoning classification of certain property from residential to business in order to allow the construction of a shopping center on that land. *Treadway*, 24 Ill. 2d at 489, 182 N.E.2d at 220. In relevant part, they alleged that, in approving the ordinance, the city had failed to follow the publication requirements as set forth by state statute. *Treadway*, 24 Ill. 2d at 494-95, 182 N.E.2d at 223. It is in this context that the court issued the above statement that plaintiffs seek to rely upon. Plaintiffs contend that *Treadway* is controlling in the current case. They argue that, just as the *Treadway* plaintiffs alleged a violation of the state statute governing the city's exercise of its zoning power, they have alleged a violation of the constitutional due process requirements which govern Chicago's exercise of its zoning power.

However, *Treadway* is inapposite, because it did not involve the authority of a home rule municipality under the 1970 Constitution. Indeed, the *Landmarks* court distinguishes *Treadway* on this very basis. *Landmarks*, 125 Ill. 2d at 180-81, 531 N.E.2d at 16. The ordinance at issue in *Treadway* was passed in 1960. *Treadway*, 24 Ill. 2d at 495, 182 N.E.2d at 224. At that time, the ability of municipalities to zone was prescribed by, and circumscribed by, state statute. *Landmarks*, 125 Ill. 2d at 180, 531 N.E.2d at 16. Any municipal zoning ordinances that went beyond the bounds of that limited authority were necessarily invalid. *Landmarks*, 125 Ill. 2d at 181. Thus, in order to determine the validity of the challenged ordinance, the *Treadway* court had to examine its compliance with the relevant authorizing statute. By contrast, as has been discussed, the ordinances at issue in *Landmarks* and in the present case were passed pursuant to full home rule authority and therefore not necessarily tied down by the strictures of an authorizing

Nos. 08-2318 & 09-0306 cons.

statute. See *Thompson*, 96 Ill. App. 3d at 569, 421 N.E.2d at 292; *Dunlap*, 394 Ill. App. 3d at 643-46, 915 N.E.2d at 902-04.

*Cain*, 343 Ill. 217, 175 N.E. 391, cited in *Treadway*, is likewise distinguishable. At issue in *Cain* was an ordinance changing the classification of the plaintiff landowner's property from residential to commercial. *Cain*, 343 Ill. at 218, 175 N.E. at 392. The court found that, insofar as the reclassification was not passed in accordance with procedural requirements imposed by local ordinance, it was invalid. *Cain*, 343 Ill. at 222, 175 N.E. at 393. However, like *Treadway*, *Cain* takes place before the grant of home rule authority contained in the 1970 constitution. The *Landmarks* court specifically distinguishes *Cain* upon this ground. *Landmarks*, 125 Ill. 2d at 181, 531 N.E.2d at 16. It explains that "the nonuniform application of the municipality's own procedural provisions [in *Cain*] was inconsistent with the General Assembly's intent in delegating limited zoning authority to municipalities in the then-existing zoning act." *Landmarks*, 125 Ill. 2d at 182, 531 N.E.2d at 16. By contrast, since zoning authority is not thus limited by the General Assembly any more, the strictures described in *Cain* do not apply to present-day home rule municipalities in Illinois. *Landmarks*, 125 Ill. 2d at 179-81, 531 N.E.2d at 15-16.

We therefore find plaintiffs' distinctions to be unavailing and the *Landmarks* line to be controlling in this case. The IPD ordinance enacted by the city council in this case is not rendered unconstitutional simply because this municipality, a home rule unit, violated its own self-imposed ordinances in enacting the IPD ordinance. *Landmarks* and *Gasoline Dealers* both stand for the proposition that the mere failure of a home rule municipality to follow its own self-imposed regulations in enacting an ordinance is not, in and of itself, a constitutional violation. *Landmarks*,

-16-

Nos. 08-2318 & 09-0306 cons.

125 Ill. 2d at 179, 531 N.E.2d at 15 (noting that it did not "mean[] to imply that any constitutional violation is readily apparent" merely from the fact that the city council allegedly departed from the procedural requirements in its municipal code in passing the challenged ordinance); *Gasoline Dealers*, 119 Ill. 2d at 404-05, 519 N.E.2d at 453 (finding that "plaintiffs have not demonstrated that the vehicle fuel tax ordinance violates the Illinois Constitution" despite plaintiffs' assertion that the ordinance was improperly adopted under city council rules).

We find further support for this position in *Chirikos*, 87 Ill. App. 3d at 574, 410 N.E.2d at 65. As discussed above, the *Chirikos* court rejected plaintiff's contention that he was denied due process of law because the city council's taxi fare increase amendment violated the terms of a city ordinance. *Chirikos*, 87 Ill. App. 3d at 574, 410 N.E.2d at 65. In doing so, the *Chirikos* court stated, "This court cannot handle matters which *in effect* are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by that body itself." (Emphasis added.) *Chirikos*, 87 Ill. App. 3d at 574, 410 N.E.2d at 65. In other words, the mere fact that the city council might have failed to follow its own self-imposed requirements in enacting the taxi fare increase amendment did not constitute a violation of plaintiff's due process rights. Similarly, the Chicago city council's alleged failure to follow the terms of its own zoning ordinance in approving the hospital defendants' IPD does not constitute a violation of plaintiffs' due process rights in the instant case.

This conclusion flows from the broad grant of authority given to home rule municipalities with regard to zoning. We note that counsel for plaintiffs conceded at oral argument that, subject to proper procedural due process requirements, the city has a right to amend its own zoning

Nos. 08-2318 & 09-0306 cons.

ordinance and, if it chose, would have free rein to delete any conflicting provisions of a preexisting ordinance. Otherwise, no repealing or amendatory legislation would ever be possible. It was also noted at oral argument that, even if plaintiffs were to prevail in the instant case, nothing would prevent the city council from amending the zoning ordinance to remove the conflicts found by the trial court and then reenacting the challenged IPD in its entirety. Such is the power of a home rule municipality where zoning is concerned. See *Chirikos*, 87 Ill. App. 3d at 574, 410 N.E.2d at 65 ("The city council was not bound by its own previous ordinances or requirements. The council had clear right to repeal the then existing ordinance or to amend it as it saw fit").

Plaintiffs nevertheless cite *American National Bank & Trust Co. v. City of Chicago*, 209 Ill. App. 3d 96, 110, 568 N.E.2d 25, 34 (1990), for the proposition that "the *Landmarks* decision does not deprive the court of its power to review the validity of the zoning act under constitutional standards," contending that this language enables review of their constitutional due process claim in the instant case. The plaintiff in *American National Bank* challenged the city of Chicago's approval of a planned development, claiming that the city had failed to consider certain guidelines during the rezoning process as required by the municipal code, and further claiming that the passage of the ordinance constituted a violation of its constitutional due process rights. *American National Bank*, 209 Ill. App. 3d at 109-10, 568 N.E.2d at 33-34. The court found that, in any event, plaintiff had not established that the city actually failed to consider the guidelines at issue, so its claim in that regard was without warrant. *American National Bank*, 209 Ill. App. 3d at 111, 568 N.E.2d at 34-35. It further rejected plaintiff's due process claim, finding that plaintiff

-18-

Nos. 08-2318 & 09-0306 cons.

had been afforded adequate notice and opportunity to be heard regarding the planned development. *American National Bank*, 209 Ill. App. 3d at 113-14, 568 N.E.2d at 36.

To the extent that *American National Bank* stands for the proposition that the city council's breach of the municipal code, without more, would be an unconstitutional due process violation, we must reject that proposition, for all the reasons discussed above. See *Landmarks*, 125 Ill. 2d at 179, 531 N.E.2d at 15-6; *Gasoline Dealers*, 119 Ill. 2d at 404-05, 519 N.E.2d at 452-53; *Chirikos*, 87 Ill. App. 3d at 574, 410 N.E.2d at 65. However, we also note that the *American National Bank* plaintiff alleged procedural due process violations, such as lack of notice and opportunity to be heard, which were entirely separate from the claimed failure of the city council to follow its own requirements in enacting the challenged ordinance. Indeed, no such allegations are currently before us in this appeal, although plaintiffs have raised such procedural due process allegations in the portion of the first case which is not currently before us on appeal.) Such independent claims remain cognizable under *Landmarks* and its progeny. See *Landmarks*, 125 Ill. 2d at 180, 531 N.E.2d at 16; *Gasoline Dealers*, 119 Ill. 2d at 404-05, 519 N.E.2d at 452-53.

Thus, in order to prevail in the instant case, plaintiffs would have to demonstrate that the city council's actions contained an independent constitutional violation – that is, a constitutional violation that could be invoked regardless of the subject ordinance's relationship to any prior or collateral ordinances. *Landmarks*, 125 Ill. 2d at 179-80, 531 N.E.2d at 15-16; *Chirikos*, 87 Ill. App. 3d at 574, 410 N.E.2d at 65. In order to establish such a constitutional violation, plaintiffs would have to show that the city council's actions in enacting the IPD ordinance failed to pass

-19-

Nos. 08-2318 & 09-0306 cons.

rational basis review, under which legislative action will be upheld as long as it bears a rational relationship to a legitimate legislative purpose and is not arbitrary or unreasonable. *Napleton*, 229 Ill. 2d at 307-09, 891 N.E.2d at 847-48 (zoning amendment challenged on due process grounds was properly reviewed under the rational basis test); see *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46, 145 N.E.2d 65, 68 (1957) ("it is primarily the province of the municipal body to determine the use and purpose to which property may be devoted, and it is neither the province nor the duty of the courts to interfere with the discretion with which such bodies are vested unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals"); *City of Aurora v. Burns*, 319 Ill. 84, 94 (1925) (zoning classifications "when exercised reasonably, may bear a rational relation to the health, morals, safety and general welfare of the community"). This is a broadly deferential standard. As our supreme court has stated in applying this standard, "Whether a statute is wise or unwise, and whether it is the best means to achieve the desired results, are among the matters for the legislature and not the courts. A difference of opinion is insufficient to bring the classification to a court's attention." *People v. Shephard*, 152 Ill. 2d 489, 503, 605 N.E.2d 518, 525 (1992). Moreover, it is well established that municipal ordinances, like statutes, "are presumed constitutional, and the burden of rebutting that presumption is on the party challenging the validity of the statute to clearly demonstrate a constitutional violation." *Napleton*, 229 Ill. 2d at 306, 891 N.E.2d at 846; see *La Salle*, 12 Ill. 2d at 46, 145 N.E.2d at 68 (zoning ordinances are presumptively valid).[2]

---

[2] We note in passing that, in the portion of their first action that is presently before us,

Nos. 08-2318 & 09-0306 cons.

Plaintiffs are unable to meet this high standard. At oral argument, the parties were in apparent consensus that the purpose of the IPD was to ensure that the hospital defendants would remain in the neighborhood to continue providing health care to residents. Plaintiffs cannot and do not assert that the provision of health care to the community is not a legitimate governmental goal. Nor do they assert that allowing the hospital defendants to carry out their development plans is not rationally related to achieving that goal. Rather, plaintiffs' challenge to the ordinance at issue, though dressed in constitutional language, hinges exclusively on their allegation that the city violated its own self-imposed requirements in approving the ordinance. Their entire case rises or falls by their claim of inconsistency between the two; without any such inconsistency, they have no case at all. And, as discussed, such inconsistency is not a *per se* constitutional violation under *Landmarks* and *Gasoline Dealers*. *Landmarks*, 125 Ill. 2d at 179, 531 N.E.2d at 15-16; *Gasoline Dealers*, 119 Ill. 2d at 404-05, 519 N.E.2d at 452-53.

_____

plaintiffs are bringing a facial challenge to the IPD ordinance, not a challenge to the ordinance as specifically applied to the St. Joseph Campus, because they seek to have the ordinance voided in its entirety. As they are bringing a facial challenge, plaintiffs bear the burden of demonstrating that there is no set of circumstances under which the ordinance would be valid. *Napleton*, 229 Ill. 2d at 306, 891 N.E.2d at 846. Accordingly, the factors set out by the court in *La Salle*, 12 Ill. 2d at 46, 145 N.E.2d at 68, for assessing the validity of a zoning ordinance in light of the gain to the public when measured against the burdens imposed upon the individual property owner, do not apply, because such factors are circumstance-dependent. *Napleton*, 229 Ill. 2d at 318, 891 N.E.2d at 852. Nor do plaintiffs argue their application to the instant case.

-21-

Nos. 08-2318 & 09-0306 cons.

Plaintiffs' next major argument is that *Landmarks* and its progeny are distinguishable on grounds that plaintiffs in those cases did not invoke the due process guarantee in section 11-13-25(b) of the Illinois Municipal Code. (Indeed, *Landmarks* was decided well before the 2006 enactment of section 11-13-25.) By contrast, plaintiffs in the present case have claimed that enactment of the IPD ordinance violates the terms of section 11-13-25(b). However, that section does not change anything in our analysis of this case. Section 11-13-25 reads:

"(a) Any special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the corporate authorities of any municipality, home rule or non-home rule, shall be subject to de novo judicial review as a legislative decision, regardless of whether the process of its adoption is considered administrative for other purposes. ***

(b) The principles of substantive and procedural due process apply at all stages of the decision-making and review of all zoning decisions." 65 ILCS 5/11-13-25 (West 2006).

Plaintiffs argue that, by passing the IPD ordinance in violation of other provisions of the Chicago Zoning Ordinance, the city has denied them the due process protections guaranteed in section 11-13-25(b). Plaintiffs further imply in their brief that since zoning decisions are "subject to de novo judicial review" under section 11-13-25(a), we are to accord no deference to the decision of the Chicago city council in conducting our analysis of their claim.

However, such a view represents a misunderstanding of the scope and purpose of section 11-13-25. This section must be understood as an attempt to nullify the effect of the court's

-22-

Nos. 08-2318 & 09-0306 cons.

decision in *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 781 N.E.2d 223 (2002),

which held that a municipality was acting in an administrative (otherwise known as a quasi-

judicial) capacity rather than in a legislative capacity in ruling on a special use permit application.

*Dunlap*, 394 Ill. App. 3d at 639-40, 915 N.E.2d at 899; *Millineum Maintenance Management,*

*Inc. v. County of Lake*, 384 Ill. App. 3d 638, 647, 894 N.E.2d 845, 855 (2008). The distinction

is significant because the two types of decisions are subject to different standards of review:

Legislative decisions are subject only to rational basis review as long as they do not implicate a

fundamental constitutional right (*Millineum*, 384 Ill. App. 3d at 642-43, 894 N.E.2d at 852),

while administrative decisions are subject to heightened scrutiny. *City of Chicago Heights v.*

*Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 13, 749 N.E.2d 916,

924 (2001). Specifically, when an administrative ruling on a zoning permit application is

reviewed, the decision "may be reviewed to determine whether the decision was made in

compliance with any criteria listed in the zoning ordinance." *Living Word*, 196 Ill. 2d at 13, 749

N.E.2d at 925. By contrast, since legislative decisions are reviewed for arbitrariness, such

compliance is not dispositive, but merely a factor to be considered. *Living Word*, 196 Ill. 2d at

13, 749 N.E.2d at 925.

As mentioned, the court in *Klaeren* ruled that a municipality granting a special use permit

was taking administrative action and therefore subject to a heightened level of review. *Klaeren*,

202 Ill. 2d at 183, 781 N.E.2d at 234. The legislature expressly responded to this decision by

classifying every adopted zoning amendment as a legislative act rather than an administrative one.

*Dunlap*, 394 Ill. App. 3d at 641, 915 N.E.2d at 900-01; *Millineum*, 384 Ill. App. 3d at 647, 894

-23-

Nos. 08-2318 & 09-0306 cons.

N.E.2d at 856. That is, the phrase "de novo" in section 11-13-25 cannot be read in isolation, but must be understood in its context – " 'de novo review *as a legislative decision*' " – which prescribes the standard of review as that which is applicable to legislative decisions. (Emphasis in original.) *Millineum*, 384 Ill. App. 3d at 652, 894 N.E.2d at 860.[3] Consequently, the IPD ordinance remains subject to rational basis review, despite the fact that plaintiffs have brought a claim under section 11-13-25. For the reasons discussed above, it passes muster under that standard.

Plaintiffs further raise the contention that allowing a municipality to violate its own self-imposed regulations is contrary to public policy because it upsets the expectations of property owners and potentially disrupts the protections provided by the Chicago Zoning Ordinance. However, as noted earlier, there is no dispute that the city of Chicago retains full power to repeal or amend the zoning ordinance that was allegedly contravened in the instant case, which makes plaintiffs' protest in this regard lose much of its force. Moreover, in any case, "[t]his court may not act to invalidate legislation simply upon considerations of what litigants, attorneys or this court may regard as the public welfare." *Chirikos*, 87 Ill. App. 3d at 574, 410 N.E.2d at 65. Rather, we are bound to follow the principles articulated by our supreme court in *Landmarks* and *Gasoline Dealers*. See *Landmarks*, 125 Ill. 2d at 179, 531 N.E.2d at 15-16; *Gasoline Dealers*,

---

[3] Indeed, it has been suggested that if section 11-13-25 were interpreted as requiring wholly *de novo* review of legislative zoning decisions, such review would be an impermissible assumption of executive power by the judiciary and the section would therefore be unconstitutional. *Millineum*, 384 Ill. App. 3d at 652, 894 N.E.2d at 860.

Nos. 08-2318 & 09-0306 cons.

119 Ill. 2d at 404, 519 N.E.2d at 452-53.

Plaintiffs finally cite a number of out-of-state cases which, they argue, support their contention that a municipality's failure to follow self-imposed regulations in enacting an ordinance is, in itself, sufficient grounds to invalidate that ordinance. However, a number of the cases they raise are distinguishable.

For instance, in *Miller v. City of Albuquerque*, 89 N.M. 503, 554 P.2d 665 (1976), petitioner applied to have a parcel of his land rezoned from R-1 (single-family residential) to R-3 (multifamily residential). The city's zoning commission subsequently initiated its own zone change request to rezone the subject property to SU-1 (special use for planned residential development), which was more restrictive than the original R-1. *Miller*, 89 N.M. at 504, 554 P.2d at 666. In doing so, the commission was knowingly acting beyond the bounds of its own authority and without the concurrence of any of the landowners whose property interests were involved. *Miller*, 89 N.M. at 506, 554 P.2d at 668. Nevertheless, the commission proceeded to approve its own request to change the classification to SU-1. *Miller*, 89 N.M. at 504, 554 P.2d at 666. The court found that petitioner's due process rights were violated, stating that in bypassing its own rules, the commission "denied petitioner, in violation of the requirements of due process, a meaningful and impartial hearing on his properly submitted zone change application." *Miller*, 89 N.M. at 506, 554 P.2d at 668. Thus, *Miller* was not premised solely on the zoning commission's failure to follow its own self-imposed requirements, but rather on an independent procedural due process claim, namely, the failure to give petitioner a meaningful right to be heard. *Landmarks* does not foreclose such independent procedural due process claims (*Landmarks*, 125

-25-

Nos. 08-2318 & 09-0306 cons.

Ill. 2d at 180 (stating that plaintiff "has not contended that the ordinance was enacted in violation of constitutional guarantees of *** procedural due process")), yet plaintiffs have not raised such an independent claim in the portions of their actions currently before us on appeal.

A similar distinction arises in *McArthur v. Zabka*, 177 Colo. 337, 494 P.2d 89 (1972), also cited by plaintiffs, where the owners of property recently annexed by the city of Greeley challenged the validity of the zoning classification imposed upon their land, alleging procedural deficiencies in its adoption. Under the city charter, the relevant procedural requirements for imposing a zoning classification were as follows: the planning commission would submit a proposal, after which the city council was required to hold a public hearing on the proposal and then accept it, reject it, or send it back to the commission for further study. *McArthur*, 177 Colo. at 342-43, 494 P.2d at 92. What actually happened was this: after the commission submitted its proposal and a public hearing was held on that specific proposal, the city council rejected it and then substituted its own, apparently more restrictive, proposal on its own initiative. *McArthur*, 177 Colo. at 342, 494 P.2d at 91. The city council then approved its own substituted proposal without ever holding a public holding on that proposal. *McArthur*, 177 Colo. at 342, 494 P.2d at 91. The court found that this deficiency was fatal to the ordinance. *McArthur*, 177 Colo. at 346, 494 P.2d at 93. In rendering this decision, the court found it significant that, in failing to follow its own procedural requirements, the city deprived plaintiffs of the opportunity to prove that the city's final proposal would not be appropriate for their land or to prove that a compromise between the commission's original proposal and the city's final proposal would have been feasible. *McArthur*, 177 Colo. at 344-45, 494 P.2d at 93. Thus, as in *Miller*, the city's failure to

-26-

follow self-imposed regulations was not the sole grounds of seeking relief but, rather, was alleged in conjunction with violations of procedural due process that resulted therefrom.

Plaintiffs additionally cite *Udell v. Haas*, 21 N.Y.2d 463, 469, 235 N.E.2d 897, 900, 288 N.Y.S.2d 880, 893 (1968), where a zoning amendment was struck down for not being made "in accordance with a comprehensive plan" as required by village law. This requirement of a comprehensive plan, stated the court, was part of the "fundamental conception of zoning" instituted under the belief that "consideration must be given to the needs of the community as a whole." *Udell*, 21 N.Y.2d at 469, 235 N.E.2d at 900, 288 N.Y.S.2d at 893. Thus, more than a mere transgression of village standards was at stake; the failure to act under the auspices of a comprehensive plan was at odds with the whole conception of zoning under New York law. As with the previous two cases, more was at stake in *Udell* than a mere deviation from the letter of self-imposed regulations, which is all that plaintiffs have brought before us in the instant appeal as a grounds for invalidation of the IPD ordinance.

Moreover, in any event, cases from foreign jurisdictions are not binding upon us. *Mikrut v. First Bank of Oak Park*, 359 Ill. App. 3d 37, 58, 832 N.E.2d 376, 392 (2005). Therefore, to the extent that the out-of-state cases cited by plaintiffs are inconsistent with the precedent laid down by our supreme court on this issue (see *City of Elgin*, 169 Ill. 2d at 63, 660 N.E.2d at 881; *Landmarks*, 125 Ill. 2d at 179, 531 N.E.2d at 15-16; *Gasoline Dealers*, 119 Ill. 2d at 404-05, 519 N.E.2d at 452-53), we cannot follow them.

As we have found that any inconsistency between the terms of the IPD and the terms of the Chicago zoning ordinance would not, in any event, be grounds for invalidating the IPD, we

need not reach the alternate ground that defendants urge in support of the judgment below, namely, that the IPD is not actually at odds with the Chicago zoning ordinance. Furthermore, our finding here is dispositive of both of plaintiffs' appeals, because both are premised upon the claimed facial invalidity of the IPD ordinance.

Accordingly, for the foregoing reasons, the judgments of the trial court are affirmed.

Affirmed.

CAHILL, P.J., and R.E. GORDON, J., concur.

Nos. 08-2318 & 09-0306 cons.

| | REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT<br>(Front Sheet to be Attached to Each Case) |
|---|---|
| Please use the<br>following form | Condominium Association of Commonwealth Plaza, an Illinois Not-For-Profit Corporation; Suhail Al Chalabi; Virginia M. Harding; and Darren Moss,<br><br>Plaintiffs-Appellants,<br>v.<br><br>The City of Chicago, a Municipal Corporation; the Chicago Plan Commission of the City of Chicago; Lori T. Healey, Commissioner, Department Of Planning and Development; Resurrection Health Care, an Illinois Not-For-Profit Corporation; and Saint Joseph Hospital, an Illinois Not-For-Profit Corporation;<br><br>Defendants-Appellees.<br>_____<br><br>Condominium Association of Commonwealth Plaza, an Illinois Not-For-Profit Corporation; Suhail Al Chalabi; Virginia M. Harding; and Darren Moss,<br><br>Plaintiffs-Appellants,<br>v.<br><br>The Chicago Plan Commission of the City of Chicago, Linda Searl, Vice Chairman and Acting Chairman; Lori T. Healey, Secretary, and Commissioner of the Department of Planning and Development; Alderman William J.P. Banks, Alderman Edward M. Burke, Allison S. Davis, Mayor Richard M. Daley, Leon D. Finney, Jr., Doris B. Holleb, Carole Brown, Amrish K. Mahajan, George W. Migala, Alderman Burton F. Natarus, John H. Nelson, Nancy A. Pacher, Alderman Mary Ann Smith, Alderman Bernard L. Stone, and Alderman Regner "Ray" Suarez, Members of the Commission; Resurrection Health Care, an Illinois Not-For-Profit Corporation; Saint Joseph Hospital, an Illinois Not-For-Profit Corporation;<br><br>Defendants-Appellees. |
| Docket No. | No. <u>1-08-2318 & 1-09-0306 cons.</u> |
| COURT | Appellate Court of Illinois<br>First District, <u>SIXTH</u> Division |
| Opinion Filed | <u>March 5, 2010</u><br>(Give month, day and year) |
| | JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT: |
| JUSTICES | <u>    Cahill, P.J., and R.E. Gordon, J.    </u>, concur. |

| APPEAL from the Circuit Court of Cook County; the Hon___ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin: Appeal from the Circuit Court of Cook County. The Hon. __Sophia Hall,__ Judge Presiding. |
|---|---|
| APPELLANTS: John Doe, of Chicago | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented. APPELLANTS: Reuben L. Hedlund and Sarah J. Isaacson, Hedlund & Hanley, LLC, 77 West Wacker Drive, Suite 4800, Chicago, Illinois 60601-1664 |
| For APPELLEES, Smith and Smith of Chicago | APPELLEES (City of Chicago, Chicago Plan Commission, and Lori T. Healey): Mara S. Georges, Benna Ruth Solomon, Myriam Zreczny Kasper, and Jennifer Erickson Baak, 30 N. LaSalle St., Suite 800, Chicago, Illinois 60602 APPELLEES (Resurrection Health Care and St. Joseph Hospital): William J. McKenna and Benjamin B. Folsom, Foley & Lardner, LLP, 321 N. Clark St., Suite 2800, Chicago, Illinois 60654 |
| Add attorneys for 3rd party appellants and/or appellees. | |